**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:23-CV-61621-RS**

LUPIN ATLANTIS HOLDINGS SA, a foreign corporation, and LUPIN INC., a Delaware Corporation,

               Plaintiffs,

v.

XIAN-MING ZENG, TRANSPIRE BIO, INC., AXEL PERLWITZ, and WILLIAM SCHACHTNER,

               Defendants.

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants Xian-Ming Zeng ("Dr. Zeng"), Transpire Bio, Inc. ("Transpire"), Axel Perlwitz, and William Schachtner (collectively, "Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint (ECF No. 31) in its entirety.

## EXECUTIVE SUMMARY

A majority of the causes of action in the First Amended Complaint (the "FAC") are based on the notion that Defendant Dr. Zeng took trade secrets when he left Lupin and then started Transpire approximately one year later. However, nearly two and a half years after Dr. Zeng left Lupin, and even after having performed a forensic analysis of Dr. Zeng's computer, Plaintiffs are unable to plead any of the elements of a trade secrets claim: they cannot allege that Dr. Zeng improperly acquired any Lupin trade secrets or that he has used Lupin trade secrets in any way, nor has Lupin described the trade secrets that they believe Dr. Zeng took with the legally-required specificity. In fact, despite having had the benefit of Defendants' initial motion to dismiss, which challenged these exact same failures (ECF No. 12), and despite using the maximum time allotted in the case management order (ECF No. 30) to amend their pleading, Plaintiffs *still* have not specified what supposed trade secrets were taken or how they were used. Instead, Plaintiffs allege only that Dr. Zeng accessed Lupin documents (which he was authorized to access) while he was a Lupin employee, and that his new business is now advertising progress at a "highly unlikely" pace. Those allegations, even if true, are insufficient to support Plaintiffs' claims.

Given the many defects in Plaintiffs' trade secrets claims, Plaintiffs have now rounded out their First Amended Complaint with two other theories. The first is a newly concocted theory (absent from Lupin's initial complaint in this matter and its failed state court complaint against Dr. Zeng, which was filed in March 2023) that Dr. Zeng stole Lupin's corporate opportunity with Smoore International Holdings Ltd. ("Smoore"), which is the parent company of Defendant Transpire. Plaintiffs allege that, while Dr. Zeng was an employee of Lupin's, Smoore approached Dr. Zeng about a collaboration "to adapt and optimize Smoore's vaping technology with Lupin's inhalation pharmaceutical drug business." FAC ¶ 4. Plaintiffs allege that, rather than sharing this opportunity with Lupin, Dr. Zeng "usurped" the opportunity for himself, launching Transpire to partner with Smoore. *Id.* ¶¶ 5-7. However, Plaintiffs do not (and cannot) allege that Transpire's business has anything to do with the alleged corporate opportunity "to adapt and optimize Smoore vaping technology"—because it does not. Transpire has nothing to do with Smoore's vaping

1

technology (and Plaintiffs do not claim any such connection), and therefore there was no usurpation of a corporate opportunity.

The FAC's second new theory fares no better. Plaintiffs argue that Transpire (Dr. Zeng's new employer) was barred from hiring Lupin employees because Dr. Zeng was subject to a non-solicitation provision. This theory, which attempts to subject the entirety of Transpire to the terms of Dr. Zeng's personal non-solicitation provision, contradicts both the plain language of the employment contract and United States antitrust law. No-poach agreements between competitors are illegal and void. Each of the counts of the FAC should therefore be dismissed for the reasons summarized below:

**Counts I & II:** To state a claim for misappropriation under either the Defend Trade Secrets Act ("DTSA") or the Florida Uniform Trade Secrets Act ("FUTSA"), Plaintiffs must allege that Dr. Zeng either (i) acquired trade secrets by "improper means," or (ii) used or disclosed Plaintiffs' trade secrets without permission. Plaintiffs do neither—they do not allege that Dr. Zeng employed improper means to acquire their trade secrets, nor do they allege any facts at all concerning Dr. Zeng's use of any Lupin trade secret. Plaintiffs do not even define any specific trade secret that Dr. Zeng purportedly took or used (which they are legally required to do). Plaintiffs merely plead that Dr. Zeng—while an employee of Lupin—"accessed or opened" numerous Lupin documents that may have contained unspecified trade secrets. Consequently, the FAC fails to satisfy the first prong of a claim for misappropriation. Plaintiffs similarly fail to identify any trade secret that Defendants have allegedly used or disclosed. The FAC therefore also fails to satisfy the second prong of a claim for misappropriation. For these reasons, Counts I and II must be dismissed.

**Count III:** Plaintiffs' breach of contract claim fails because Plaintiffs lack standing to enforce the restrictive covenants at issue. Plaintiffs are not signatories to the relevant employment agreement they seek to enforce. Instead, they claim to be assignees of Lupin GmbH, a non-party, and therefore seek to enforce Lupin GmbH's alleged rights against Dr. Zeng. This bootstrap is not permitted under Florida law: a restrictive covenant "can be enforced by assignees, but only if the agreement expressly so provides." *Marx v. Clear Channel Broadcasting, Inc.*, 887 So. 2d 405, 408 (Fla. 4th DCA 2004). Where it does not, "[it] is not enforceable by the assignee." *Id.* In this case, the relevant agreements do not themselves provide that the restrictive covenants are assignable to Plaintiffs, and Plaintiffs therefore lack standing to enforce them.

**Count IV:** As alleged in the FAC, the only fiduciary duty owed by Dr. Zeng arose from his contractual role as a Lupin employee. At most, this would have amounted to a standard employee's duty of loyalty to his employer. However, Plaintiffs do not allege that Dr. Zeng took any disloyal actions during his employment. The solicitation described in Plaintiffs' FAC occurred *after* Dr. Zeng's employment ended and therefore at a time when Dr. Zeng owed no duty to Lupin. Even if any solicitation had occurred during his employment by Lupin, this claim would be barred by the independent tort doctrine because it overlaps precisely with the alleged breaches of Dr. Zeng's non-solicitation provision. Plaintiffs also fail to explain how Dr. Zeng owed a fiduciary duty to the Lupin Inc. entity (considering he is not alleged to have been employed by Lupin Inc.), or how Dr. Zeng violated a duty of loyalty by not "disclosing"—directly to Lupin Inc.'s board of directors—the fact that a Smoore employee expressed interest in a collaboration concerning vaping technology that was not viable and was ultimately never pursued by any party to this action. These claims therefore fail.

**Count V:** Plaintiffs' cause of action for civil conspiracy is a derivative claim and fails because it relies on Plaintiffs' other alleged causes of action, none of which state a claim. Moreover, to the extent the claim relies upon trade secrets theft, it is preempted by FUTSA.

**Counts VI, VI, and VI [sic]:** Plaintiffs' breach of fiduciary duty, aiding and abetting breach of contract, and tortious interference with contractual relationship claims—all of which are designated Count VI—uniformly fail for a common reason: the FAC does not include any specific, non-conclusory allegations concerning any action taken by the relevant Defendants to sustain these causes of action. The breach of fiduciary duty claim also fails because, as a matter of Florida law, founding a business to compete with one's employer in the future is not a breach of fiduciary duty. Moreover, the aiding and abetting and tortious interference claims fail because they improperly seek to convert a non-solicitation provision in Dr. Zeng's employment contract into a "no poach" agreement between Lupin and Transpire that renders any Lupin employee who accepts work with Transpire, or any Transpire employee who solicits a Lupin employee, a tortious co-conspirator. Dr. Zeng's contract does not impose such restrictions on third parties such as Perlwitz, Schachtner, and Transpire, and if it did, such a no-poach agreement would be illegal and unenforceable.

For all of these reasons, and others discussed below, the FAC should be dismissed.

3

## BACKGROUND

Dr. Zeng is a leading expert in the development and commercialization of inhalation products. He previously worked as global head of inhalation product development for a pharmaceutical company named Teva, then was recruited by Lupin—another pharmaceutical company—to develop Lupin's inhalation franchise. Dr. Zeng essentially built Lupin's inhalation R&D organization in the United States from scratch, including personnel, facilities, and infrastructure. He led development of their inhalation product pipeline, trained and taught Lupin staff on the development of inhalation products, and was responsible for developing nearly all of Lupin's inhalation products currently available in the United States, United Kingdom, and Europe.

Dr. Zeng submitted his resignation letter to Lupin on August 17, 2021. As pleaded in the FAC, a primary reason for Dr. Zeng's resignation was to return to China so that he and his wife could spend more time with their aging parents. Omitted from the FAC is the fact that, in the months after Dr. Zeng resigned and returned to China, Dr. Zeng's father and father-in-law both passed away suddenly. These passings caused Dr. Zeng to reevaluate his plans, and Dr. Zeng and his family decided to return to Florida, where (months later) he launched Transpire. Dr. Zeng is now Chief Executive Officer of Transpire, which also works on pharmaceutical products.

Since Dr. Zeng's return, Plaintiffs have sought to prevent Dr. Zeng from engaging in lawful competition by attempting to cast a cloud over Transpire and subjecting Dr. Zeng to meritless litigation. Tellingly, this is not the first suit Plaintiffs have filed against Defendants even though they are unable to plead claims sufficient to survive a motion to dismiss. Plaintiffs first filed suit against Transpire and Dr. Zeng in Florida state court nearly a year ago, serving over 120 discovery requests within a few weeks. Transpire and Dr. Zeng promptly moved to dismiss that case for failure to state a claim. Plaintiffs never responded to the motion and dismissed the complaint without prejudice; Transpire has now returned to Florida state court to seek reimbursement of the legal fees it expended in responding to Lupin's meritless action.

## MEMORANDUM OF LAW

### LEGAL STANDARD

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that

4

the pleader is entitled to relief." *Mertiri v. Casa La Quinta Condominium Ass'n*, 2021 WL 10396230, at *2 (S.D. Fla. Feb. 3, 2021) (quoting *Iqbal*, 556 U.S. at 679).  In such circumstances, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) (alteration adopted) (internal quotation marks omitted).  "Factual allegations that are merely consistent with a defendant's liability" are not sufficient to avoid dismissal.  *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks omitted).

## ARGUMENT

## I.   <u>Counts I and II Fail to State a Claim Under the DTSA and FUTSA.</u>

Plaintiffs' claims against Dr. Zeng and Transpire under both the DTSA and FUTSA fail for at least two independent reasons.  First, Plaintiffs fail to allege that Defendants misappropriated any trade secrets within the meaning of either statute.  Second, Plaintiffs fail to sufficiently identify any of the purported trade secrets that Defendants allegedly misappropriated.  Both of these reasons are independently sufficient bases for the Court to dismiss the Plaintiffs' DTSA and FUTSA claims, and Plaintiffs fail as to both.

### A.   **Plaintiffs Fail to Allege that Defendants Misappropriated Trade Secrets.**

Plaintiffs fail to allege the most fundamental aspect of a claim for misappropriation of trade secrets under the DTSA and FUTSA: an actual misappropriation.  As courts have recognized, "[t]he definition of misappropriation set forth in both the DTSA and the FUTSA is not materially different." *PrismHR, Inc. v. Worklio, LLC*, 2019 WL 13189471, at *3 (S.D. Fla. Feb. 8, 2019). Both statutes define misappropriation to require that at least one of two prongs be satisfied:  to state a claim, a plaintiff must allege either (1) "*acquisition* of a trade secret … by improper means" or (2) "*disclosure or use* of a trade secret … without express or implied consent." *Id.* (emphases in original).  The statutes are explicit about what constitutes acquisition by "improper means," defining improper means "to include 'theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.'" *Id.* at *4.

Where a plaintiff alleges that the pertinent trade secrets were learned while the defendant was an employee, courts in this District have held that such knowledge was "obviously … not obtained through 'improper means'" and therefore does not constitute "acquisition" under the DTSA or FUTSA. *Id.*  In *PrismHR, Inc.*, for instance, the court granted the defendant's motion to

5

dismiss where the complaint alleged that an employee "learned the Trade Secrets while a Summit employee" and failed to allege any other "facts demonstrating that [the employee] disclosed or used the Trade Secrets in a manner that constitutes misappropriation." *Id.* at *4-5.  The Eleventh Circuit has reiterated this critical distinction, noting that allegations that a defendant has "*obtained*" trade secrets are insufficient to state a claim that a defendant has "*misappropriated*" them.  *See DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016).

The allegations in this case are virtually identical to those that a district court in this circuit recently found insufficient to state a claim in *Angel Oak Mortg. Sols. LLC v. Mastronardi*.  *See* 593 F. Supp. 3d 1234 (N.D. Ga. 2022). There, the plaintiff alleged that "during [defendant's] employment," *id.* at 1244, and "shortly before" taking a job with a competitor, *id.* at 1237, the defendant "sent the relevant trade secrets from his work email account to his personal email account" in violation of his contractual obligations (1) not to disclose, divulge, use, or apply the company's trade secrets or confidential information, and (2) to return to the company all of the company's data and confidential information upon termination, *id.* at 1244. The plaintiff argued that these violations of the defendant's obligations with respect to confidentiality and company property established acquisition by "improper means."  *Id.*  The court rejected this argument, explaining that when the defendant sent himself "information to which he already had access," he did not violate either contractual provision, and that, in any event, "even if [the defendant] did fail to give [the information] back when required … this would amount to improper *retention*, not improper *acquisition*."  *Id.* at 1244-45.  The court further explained that neither contractual provision had any bearing on the "means" by which the information was "acquired," and so could not establish acquisition by "improper means."  *Id.* at 1245.  Accordingly, the court held that plaintiff's argument "does not support a claim under DTSA" and dismissed the trade secrets claims.  *Id.*

The same analysis is applicable here.  Plaintiffs fail to satisfy the first prong of the test for misappropriation because they have not satisfied their obligation to plead facts demonstrating that Dr. Zeng acquired any trade secrets *by improper means*.  Plaintiffs do not and cannot allege that Dr. Zeng accessed materials he was not permitted to access or exceeded the scope of his authority in accessing any purported trade secrets. In fact, despite performing a forensic investigation of Dr. Zeng's laptop, the most Plaintiffs can allege is that, over the course of five years, Dr. Zeng "accessed or opened" documents that he was authorized to access (while insinuating that he may

6

have also downloaded them because he had an external storage device inserted into his computer, though they do not and cannot actually make that allegation).  FAC ¶ 97(a)-(g).  Because Dr. Zeng was lawfully employed by Lupin – and was authorized to access these documents – at the time in question, these are precisely the kind of allegations that do *not* constitute acquisition by "improper means" and are insufficient to state a claim.  *PrismHR, Inc.*, 2019 WL 13189471, at *4; *Angel Oak*, 593 F. Supp. 3d at 1245.

Moreover, even if Plaintiffs *did* allege that Dr. Zeng exceeded his authority (which they do not) **and** downloaded the materials in question, Plaintiffs would still fail to carry their burden.  At least one federal court has analyzed this issue in depth, addressing an argument that a DTSA claim should survive a motion to dismiss because the defendant—a former employee—had downloaded company trade secrets "beyond the scope of his permission to do so."  *FirstEnergy Corp. v. Pircio*, 524 F. Supp. 3d 732, 739 (N.D. Ohio 2021).  The *FirstEnergy* plaintiffs argued that the defendant having exceeded the scope of his permissions amounted to acquisition by "improper means."  *Id.* However, the court explained that "[a]lthough Plaintiffs' argument has some superficial appeal, it runs headlong into the plain language of the statute" because "misappropriation under the acquisition theory requires 'that the trade secret [be] acquired by improper means.'"  *Id.*  The court explained that "[w]hile treating acquisition of trade secrets by exceeding one's permissions as 'improper means' makes a certain amount of sense, that term—improper means—has a specific definition and meaning in the statute.  It includes 'theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.'"  *Id.* at 739-40.  "Notably absent from this definition is the theory on which Plaintiffs proceed … namely, that [defendant] exceeded the scope of his authorized access."  *Id.* at 740.  Accordingly, Plaintiffs fail to state a claim under the first prong of the DTSA and FUTSA.

Plaintiffs likewise fail to state a claim under the second prong because they do not allege any facts to establish that Defendants used or disclosed Plaintiffs' trade secrets.  The **only** factual allegation in the FAC concerning the use or disclosure of Plaintiffs' trade secrets is the vague assertion that:  "[I]t is highly unlikely that Transpire's pipeline projects could attain the progress in the formulation and development stage advertised on Transpire's website without the use of Lupin confidential information and trade secrets and the knowledge of Lupin's employees."  FAC ¶ 80.  Simply stating that something is "highly unlikely" without any specific factual explanation as to why that occurrence is "highly unlikely"—or why misconduct must be responsible for that

"highly unlikely" outcome—fails to meet the threshold pleading requirements of *Iqbal* and *Twombly* and "do[es] not permit the court to infer more than the mere possibility of misconduct," *Mertiri*, 2021 WL 10396230, at *2. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, Plaintiffs' allegation is, on its face, speculative and allows the Court to do no more than infer the possibility of misconduct. That is because the Plaintiffs claim only that Transpire's advertised progress—across all five of its generic products—seems "unlikely" absent misconduct. Plaintiffs do not allege that Defendants used any particular trade secret or confidential information in developing some or all of these products. They do not even allege whether or how any of the products and their supposed progress are related to the unspecified trade secrets at issue. Consequently, even taken as true, the allegation is insufficient to "show" that Dr. Zeng used any trade secret. Where, as here, there are "no factual allegations which taken as true show that [a defendant] disclosed or used the Trade Secrets after he resigned," a plaintiff fails to state a claim for misappropriation of trade secrets. *PrismHR, Inc.*, 2019 WL 13189471, at *5. Because Plaintiffs cannot allege that Defendants acquired any trade secrets through improper means or used or disclosed those trade secrets, the DTSA and FUTSA claims should be dismissed with prejudice.

**B.      Plaintiffs Fail to Identify the Purportedly Misappropriated Trade Secrets.**

Plaintiffs' trade secret claims also fail because they have failed to identify a single specific trade secret that Defendants purportedly misappropriated. To satisfy their burden "at the dismissal stage in federal court," a plaintiff must "allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *VVIG, Inc. v. Alvarez*, 2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019) (quoting *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016)). "[T]o state a claim with sufficient particularity, the claimant must do more than simply identify broad categories of information, such as financial and technical data." *Id.* "General allegations of 'business affairs, products, marketing systems technology, customers, end users, financial affairs, accounting statistical data, and certainly the catch-all 'all necessary know how' are insufficient." *Id.* at *4. Moreover, even including "specific terms within a sweeping definition" is "insufficient to state a trade secret claim because doing so fails to notify [defendants] *which* trade secret or secrets they allegedly misappropriated." *Id.* A complaint fails to state a claim where it does not "'lay out … which of

8

[the] 'trade secrets' were impermissibly used.'" *Id.* (quoting *Taxinet, Corp. v. Leon*, 2018 WL 3405243, at *3 (S.D. Fla. July 12, 2018)).

Plaintiffs have not come close to satisfying this pleading requirement. The FAC merely introduces a sweeping and legally insufficient category of defined "Trade Secrets" which includes, "*without limitation*," categories as broad as "overall industry and product expertise." FAC ¶ 31. Plaintiffs then offer boilerplate and conclusory allegations that "Zeng and Transpire misappropriated Lupin Inc.'s Trade Secrets," FAC ¶ 109, without ever specifying, as they must, "which of the trade secrets were impermissibly used," *VVIG, Inc.*, 2019 WL 5063441, at *4. Such "broad categories of information" and "catch-all" language fails to state a claim. *See VVIG, Inc.*, 2019 WL 5063441 at *3-4; *see also Taxinet, Corp.*, 2018 WL 3405243, at *3.

Courts in this District routinely dismiss claims for such failures. For instance, in *Taxinet*, the complaint defined the relevant trade secrets in far greater detail than Plaintiffs' FAC, describing "confidential business information, processes, techniques, software applications, and business characteristics, including present, future, and proposed services, and business model," and providing detailed descriptions of specific characteristics of the business model, including "Taximeter, GPS Navigation System, a Tracking System with panic button, a Payment Gateway for credit cards, and a future booking system." 2018 WL 3405243, at *3. However, because the complaint failed to lay out which of those trade secrets were impermissibly used, the court found that the complaint "fail[ed] to identify what trade secrets are at issue" and dismissed the claim. *Id.* The court in *VVIG, Inc.* likewise dismissed a trade secret claim that included a "grab-bag" of "broad and conclusory" information that purportedly constituted trade secrets and "fail[ed] to set forth which aspects" of that information were misappropriated. 2019 WL 5063441, at *3-4.

The FAC's identification of documents Dr. Zeng allegedly accessed does nothing to change this result, as federal courts have addressed this exact issue and held that citing documents is no substitute for identifying the allegedly misappropriated trade secrets. For example, in *Genasys Inc. v. Vector Acoustics, LLC*, the court held that simply identifying documents that purportedly include trade secrets is "impermissibly conclusory" where a plaintiff does not "detail[] how and why" the documents "are protected trade secrets." 638 F. Supp. 3d 1135, 1151 (S.D. Cal. Nov. 1, 2022). The court dismissed the plaintiff's DTSA claim because the plaintiff "fail[ed] to plead facts supporting its conclusory allegations that the identified sources of information constitute trade

9

secrets" and "fail[ed] to provide the Court with a roadmap to distill what information may be a trade secret and what may not." *Id.* at 1152.

The FAC fails for precisely the same reasons. It alleges that Dr. Zeng accessed more than 140 documents over five years of employment. *See* FAC ¶ 97. Each of those documents presumably includes many pieces of information. Some of them date back to 2015 and concern public information that would be obsolete even if it were not public. Plaintiffs provide no specifics about which of those documents contain trade secrets, what those trade secrets are, or why they are trade secrets under the statutory definition, including why the relevant information "derives independent economic value … from not being generally known." 18 U.S.C. § 1839(3) & Fla. Stat. § 688.002(4). Defendants have no way to know what information Plaintiffs believe constitutes the supposed "trade secrets," nor how those "trade secrets" relate to anything Defendants are doing at Transpire. For this reason, too, Counts I and II should be dismissed.

**II.   Count III for Breach of Contract Fails Because Plaintiffs Lack Standing.**

Plaintiffs' breach of contract claim should be dismissed because Plaintiffs lack standing to enforce the restrictive covenants at issue. The non-solicitation and confidentiality provisions in Dr. Zeng's employment agreement are both restrictive covenants. *See, e.g.*, *Rauch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021) ("The term 'restrictive covenants' includes all contractual restrictions upon competition, such as noncompetition/nonsolicitation agreements, confidentiality agreements, exclusive dealing agreements, and all other contractual restraints of trade."). Under Florida law, restrictive covenants may be enforced against an employee only pursuant to a written agreement, and only by a party to those agreements or an authorized assignee. *Marx v. Clear Channel Broadcasting, Inc.*, 887 So. 2d 405, 408 (Fla. 4th DCA 2004).

The precise issue of whether an assignee can enforce restrictive covenants under Florida law was addressed by the Fourth District Court of Appeal in *Marx*, with the court analyzing in depth whether an assignee could properly enforce a restrictive covenant against an employee where the contract at issue did not expressly provide for (and in fact disallowed) assignment. *Id.* The court held that the assignee could ***not*** enforce the restrictive covenants, explaining that "non-competition agreements can be enforced by assignees, ***but only if the agreement expressly so provides***. Here, the contract does not so provide. Thus … the non-competition clause in this case is not enforceable by the assignee." *Id.* at 408 (emphasis added).

10

In the instant case, Plaintiffs are concededly *not* signatories to the employment agreement containing the restrictive covenants, and the employment agreement does not authorize enforcement by an assignee or successor.  *See* FAC ¶¶ 42-43; FAC Ex. 1.  Nevertheless, Plaintiffs allege that they are entitled to enforce the restrictive covenants in the employment agreement because the initial signatory to the employment agreement—an entity named Lupin Pharmaceuticals, Inc.—assigned the employment agreement to another non-party entity, Lupin GmbH, which has since transferred all of its assets, including the employment agreement, to Plaintiffs.  FAC ¶ 43.  However, the FAC alleges *no* agreement with Dr. Zeng that permitted Lupin GmbH—a non-party—to assign or transfer Dr. Zeng's restrictive covenants to either of the Plaintiff entities.  Accordingly, Plaintiffs cannot enforce the restrictive covenants against Dr. Zeng.

### III.   Count IV for Breach of Fiduciary Duty Against Dr. Zeng Fails.

Plaintiffs' breach of fiduciary duty claim against Dr. Zeng relies on two disparate sets of allegations concerning (i) solicitation of Lupin employees, and (ii) misappropriation of a corporate opportunity.  The claim fails as to solicitation of Lupin employees because Dr. Zeng was not a Lupin employee (and therefore did not owe a fiduciary duty of loyalty) when the alleged solicitations occurred after he had resigned, and because that claim is barred by the independent tort doctrine in any event.  The claim fails as to misappropriation of a corporate opportunity because Plaintiffs fail to allege facts sufficient to state a claim.

### A.   Plaintiffs Fail to Allege Any Breach of Fiduciary Duty Based on Solicitation.

To the extent Plaintiffs' breach of fiduciary duty claim relies on allegations of solicitation, it fails because Plaintiffs fail to allege the essential elements of any breach of fiduciary duty.  "The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Hill v. Nagpal*, 2013 WL 246746, at *3 (S.D. Fla. Jan. 22, 2013).  Here, the only other allegations Plaintiffs rely upon for their breach of fiduciary duty claim concern Dr. Zeng purportedly "soliciting Lupin (and its affiliates) employees *during* and *after* his employment with Lupin."  FAC ¶ 138 (emphasis added).

As to any purported solicitation *after* Dr. Zeng's employment with Lupin ended, Plaintiffs provide no allegations to support "the existence of a fiduciary duty." *Hill*, 2013 WL 246746, at *3.  Indeed, Defendants are unaware of any Florida case law supporting the proposition that an employee continues to owe a common law fiduciary duty of loyalty to an employer *after* that employee has resigned his position.  Because Dr. Zeng owed no fiduciary duties to Lupin after his

11

employment ended—and because, at minimum, Plaintiffs failed to allege the basis for any such post-employment fiduciary duty—Plaintiffs' breach of fiduciary duty claim should be dismissed as it relates to any solicitation alleged *after* Dr. Zeng's employment with Lupin ended.[1]

As to the allegation that Dr. Zeng solicited Lupin employees *during* his employment with Lupin, Plaintiffs allege virtually no facts to support this legal conclusion. The only non-conclusory fact alleged in the FAC that concerns Dr. Zeng's supposed solicitation of Lupin employees during Dr. Zeng's employment at Lupin arises in Paragraph 82. In Paragraph 82, Plaintiffs allege that, on August 19, 2021, Dr. Zeng "began to access the resumes of Lupin employees on his Lupin issued laptop." FAC ¶ 82. This is not an alleged breach of any fiduciary duty, as there are "obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n,* 605 F.3d at 1290. As just one such example (which has the added benefit of being the actual reason), Dr. Zeng reviewed the resumes of junior scientists with the potential to be promoted in order to recommend them to his successor at Lupin or to Lupin Human Resources before he left the company.

However, even if the Court were to accept Lupin's unsupported inference that Dr. Zeng was reviewing unspecified Lupin employees' resumes in August 2021 in order to hire away potential Lupin employees at a later date for a competing business that did not yet exist, this still would not constitute a breach of any duty owed by Dr. Zeng. In Florida, it is well-established and black-letter law that, while an employee owes a duty of loyalty to his employer, "mere preparation" to compete is not enough to breach that duty of loyalty. *Harllee v. Pro. Serv. Indus., Inc.*, 619 So. 2d 298, 300 (Fla. 3d DCA 1992). In fact, federal courts applying Florida law have held that even allegations that an employee "'concealed his alternative plans,'" and "'carefully planned relocation for himself and his immediate executive teammates,'" fell short of stating a claim for breach of fiduciary duty because, "[i]n sum," plaintiff alleged only that defendant "was planning to compete with [plaintiff], which does not state a plausible claim for breach of fiduciary duty." *Centennial Bank v. Servisfirst Bank Inc.*, 2016 WL 6037539, at *4 (M.D. Fla. Oct. 14, 2016).

---

[1] To be clear, Dr. Zeng denies that he engaged in any solicitation of any Lupin employees during his employment *or* after his employment, and the FAC is devoid of factual allegations concerning solicitation by Dr. Zeng personally. Dr. Zeng and Transpire are not synonymous, and numerous Transpire employees had pre-existing relationships with Lupin employees. That certain former Lupin employees were hired by Transpire is not attributable to solicitation by Dr. Zeng.

Plaintiffs' other allegations concerning Dr. Zeng's solicitation relate only to actions taken after Dr. Zeng's employment ended, when he did not owe any fiduciary duty to Lupin. Specifically, Plaintiffs allege that "[f]rom at least October 1, 2021 to the present, Zeng has aggressively solicited Lupin's employees to work for Transpire." FAC ¶ 83. Putting aside the conclusory nature of this allegation, which contains no specific facts concerning solicitation, the FAC separately alleges that *Dr. Zeng's employment ended on October 1, 2021*, meaning that the acts the Plaintiffs reference would have all occurred after Dr. Zeng left Lupin and no longer owed it any fiduciary duty. FAC ¶ 67.

Moreover, even if Plaintiffs could state a claim for breach of fiduciary duty against Dr. Zeng based on solicitation of Lupin employees (which they cannot), that claim would be barred by the independent tort doctrine. "The independent tort doctrine bars recovery in tort for actions that challenge a breach of contract[.]" *Perez v. Scottsdale Ins. Co.*, 2020 WL 607145, at * 2 (S.D. Fla. Feb. 7, 2020). Applying the independent tort doctrine, courts regularly dismiss claims that "at bottom" are not "separable from the breach-of-contract claim." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021). In *BluestarExpo, Inc.*, for example, the court dismissed fraudulent and negligent misrepresentation claims that relied on the same alleged conduct, and sought relief for the same alleged damages, as the plaintiff's breach of contract claim. *Id.* It is no defense to argue that the tort claim is pleaded in the alternative: courts have rejected the "argument that [plaintiff] has pleaded its tort claims alternatively to its breach-of-contract claims," finding that "it would be contrary to the basic premise of the independent tort doctrine to allow such pleadings in the alternative." *Id.* (quoting *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020)).

Courts have explained that the independent tort doctrine bars a claim for breach of fiduciary duty where the relevant breach overlaps with a claim for breach of a contract. *See, e.g.*, *Springboard Media, LLC v. Augusta Hitech Soft Solutions, LLC*, 2022 WL 18465128, at *2 (S.D. Fla. June 14, 2022). In *Springboard Media, LLC*, for example, the court addressed a case in which the plaintiff brought separate claims for breach of contract and breach of fiduciary duty "based on the same conduct" related to the disclosure of confidential information. *Id.* The court dismissed the breach of fiduciary duty counts "as barred by the independent tort doctrine" because they "do not allege conduct or facts independent of Defendant's breach" of the underlying contract. *Id.*

13

Here, Plaintiffs' breach of fiduciary arguments concerning Dr. Zeng's solicitation of Lupin employees is "at bottom," not "separable from the breach-of-contract claim." *BluestarExpo, Inc.*, 568 F. Supp. 3d at 1353. The FAC makes clear that the conduct underlying Plaintiffs' breach of contract and breach of fiduciary duty claims is identical. Plaintiffs' breach of contract claim asserts that Dr. Zeng "breached the [employment agreement] by directly and indirectly soliciting Lupin's employees." FAC ¶ 129. Plaintiffs' breach of fiduciary duty claim restates the identical allegations, asserting that Dr. Zeng "breached his fiduciary duty to Lupin" by "soliciting Lupin (and its affiliates) employees[.]" FAC ¶ 138. These are the types of claims—which attempt to ascribe tort liability to a contractual dispute—that the independent tort doctrine is designed to prevent. Because Plaintiffs' fiduciary duty claim overlaps completely with their breach of contract claim, it is barred by the independent tort doctrine.

Finally, Plaintiffs' breach of fiduciary claim against Dr. Zeng fails entirely as to the Lupin Inc. entity because Plaintiffs do not allege that Dr. Zeng ever worked for Lupin Inc. and provide no allegations to support the existence of a fiduciary duty owed to Lupin Inc. Plaintiffs allege only that Dr. Zeng owed fiduciary duties "[p]ursuant to his relationship as an Executive Vice President." FAC ¶ 136. However, the FAC alleges that Dr. Zeng was employed by LAHSA, not Lupin Inc. FAC ¶ 44. The FAC otherwise contains no allegations regarding the relationship between Lupin Inc. and LAHSA, or any analysis as to why Dr. Zeng would owe a fiduciary obligation to Lupin Inc. when it was not his employer.

### B. Plaintiffs' New Breach of Fiduciary Duty Theory Also Fails.

Plaintiffs' newly-added alternative theory for breach of fiduciary duty fares no better than the claim based on solicitation because once again, Plaintiffs fail to allege "the existence of a fiduciary duty" and "the breach of that duty." *Hill*, 2013 WL 246746, at *3. Plaintiffs claim that Dr. Zeng breached his fiduciary duty to Lupin by "failing to disclose" a corporate opportunity and by "eventually usurping that opportunity for himself." FAC ¶ 137. However, Plaintiffs allege no facts and cite no law that would establish that Dr. Zeng owed a fiduciary duty to disclose preliminary discussions over a potential collaboration to the board of directors for Lupin Inc.— which, as described above, is not even alleged to have been Dr. Zeng's employer. Nor do Plaintiffs allege a single fact to support the conclusory assertion that Dr. Zeng "usurped" the corporate opportunity offered to Lupin. On the contrary, the FAC includes numerous allegations concerning Transpire's pipeline and not a single one of them involves the corporate opportunity presented to

14

Lupin—specifically "a potential collaboration … to combine Smoore's e-cigarette technology with Lupin's knowhow and experience in the inhaled medication industry."[2] FAC ¶ 57. Because Plaintiffs have failed to plead any facts to support the existence or breach of a fiduciary duty relating to this corporate opportunity, Plaintiffs' claim should be dismissed.

**IV.** **Count V for Civil Conspiracy Fails to State a Claim for Any Underlying Wrong.**

Plaintiffs' claim for civil conspiracy is barred because Plaintiffs have failed to state a claim for any underlying wrong. It is black-letter law that conspiracy is "not a freestanding tort." *SFM Holdings Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014); *see also Lorillard Tobacco Co. v. Alexander*, 123 So.3d 67, 80 (Fla. 3d DCA 2013) ("Conspiracy is not a separate or independent tort[.]"). Instead, civil conspiracy claims are "a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability." *Id.* "An actionable conspiracy requires an actionable underlying tort or wrong." *Hercules Capital, Inc. v. Gittleman*, 2018 WL 395489, at *24 (S.D. Fla. Jan. 12, 2018). Where "there is no underlying 'unlawful act' or 'lawful act done by unlawful means' on which to base a civil conspiracy claim," a civil conspiracy claim must be dismissed. *Id.*

Here, the civil conspiracy claim relies exclusively on the same misappropriation and solicitation claims that fail for the reasons discussed *supra*. Furthermore, as this Court has previously recognized, to the extent a conspiracy claim relies upon misappropriation of confidential information, it is precluded by FUTSA. *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956101, at *4 (S.D. Fla. Mar. 25, 2022) (Smith, J.) (dismissing civil conspiracy claim as "preempted by FUTSA" because "[t]here is no material distinction between the allegations in the civil conspiracy claim … and the trade secrets claims"). This is because "FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA." *Id.* at 3. Thus, because the FAC fails to state a claim for any underlying wrong, and because misappropriation claims are preempted by FUTSA, the claim should be dismissed.[3]

---

[2]  No such collaboration has ever occurred, and neither Dr. Zeng nor Transpire has sought to utilize Smoore's e-cigarette technology for inhaled medication. The concept went nowhere.

[3]  Plaintiffs' civil conspiracy claim is also barred by the intra-corporate conspiracy doctrine. *Mancinelli v. Davis*, 217 So. 3d 1034, 1036 (Fla. 4th DCA 2017). "Because a civil conspiracy requires an agreement between two or more parties, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Id.* at 1037; *see also*

## V.      Count VI, for Breach of Fiduciary Duty Against Perlwitz and Schachtner, Fails.

The FAC contains no factual allegations that could establish a breach of fiduciary duty on the part of either Perlwitz or Schachtner.  In the body of the FAC, Plaintiffs allege only that Perlwitz and Schachtner were listed as "cofounders" on Transpire's website for some period of time, FAC ¶ 75, were "involved with Transpire at its inception in April 2022," *id.* ¶ 77, and were "aware of Zeng's non-solicitation obligations" while they worked at Lupin, *id.* ¶ 78.  In the count for breach of fiduciary duty against Perlwitz and Schachtner, Plaintiffs add allegations that Perlwitz owed fiduciary duties pursuant to his role as Executive Director, that Schachtner owed fiduciary duties pursuant to his role as Senior Director, and that by virtue of "co-founding a competing business while employed by Lupin," and "facilitating Zeng's misappropriation of Lupin's confidential information and trade secrets and Transpire's use of same," Perlwitz and Schachtner breached their fiduciary duties to Lupin.  FAC ¶¶ 149-52.

None of these allegations state a claim for breach of fiduciary duty.  As it relates to the conclusory allegation that Perlwitz and Schachtner "facilitat[ed] Zeng's misappropriation of Lupin's confidential information and trade secrets and Transpire's use of same," the FAC does not include a single well-pleaded fact to support this allegation.  Moreover, even if Plaintiffs had alleged facts relating to Perlwitz and Schachtner misappropriating Lupin's confidential information, a breach of fiduciary duty claim based on those allegations would be barred by FUTSA.  *Surfaces, Inc.*, 2022 WL 18956101, at *3 ("FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information[.]").

Plaintiffs' allegations related to Perlwitz and Schachtner purportedly co-founding Transpire are similarly inadequate.[4]  Florida courts have repeatedly held that while an employee owes a duty of loyalty to his employer, "[a]n employee does not violate his duty of loyalty when he merely organizes a corporation during his employment to carry on a rival business after the expiration of his employment." *Centennial Bank*, 2016 WL 6037539, at *4.  Allegations that an

---

*McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000) (explaining that under the intra-corporate conspiracy doctrine, "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself").

[4]      It is factually false that Perlwitz and Schachtner were co-founders of Transpire. Plaintiffs' allegation appears to be based on a short-lived error from Transpire's webpage that erroneously listed a number of employees as co-founders.  However, for purposes of this motion, Defendants must accept the allegation as true.

employee "was planning to compete" do not state a plausible claim for breach of fiduciary duty. *Id.*; *see also Harllee*, 619 So. 2d at 300 ("[M]ere preparation" to compete is not enough to breach the duty of loyalty owed by an employee to his employer).  In order to state a claim for breach of fiduciary duty, the complaint must allege something more, such as the employee engaging in "disloyal acts" during his employment.  *Centennial Bank*, 2016 WL 6037539, at *4.  The FAC contains no such allegations against Perlwitz or Schachtner.  In fact, Plaintiffs do not allege that Perlwitz or Schachtner took any actions at all, other than to co-found Transpire.  As a result, the breach of fiduciary duty claims against Perlwitz and Schachtner should be dismissed.

### VI.   Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of Contract.

The FAC contains no factual allegations that establish Perlwitz or Schachtner aided or abetted the breach of any contract.  As discussed above, Plaintiffs allege only that Perlwitz and Schachtner were listed as "cofounders" on Transpire's website, FAC ¶ 75, were "involved with Transpire at its inception in April 2022," *id.* ¶ 77, and were "aware of Zeng's non-solicitation obligations," *id.* ¶ 78.  In the count for aiding and abetting breach of contract against Perlwitz and Schachtner, Plaintiffs add the allegation that Perlwitz and Schachtner "encouraged and substantially assisted Zeng's hire of" the former Lupin employees who joined Transpire, FAC ¶ 159, but Plaintiffs do not allege a single well-pleaded fact to support this conclusory assertion.  In fact, Plaintiffs do not even allege that these former Lupin employees were solicited or hired within the period during which Dr. Zeng was allegedly restricted from solicitation.  Plaintiffs have therefore failed to state a claim for aiding and abetting breach of contract.[5]

Plaintiffs' only other theory of liability is that, because Perlwitz and Schachtner knew "that Zeng was prohibited by contract" from soliciting them but nonetheless "accepted employment at Transpire," they therefore "complet[ed] Zeng's solicitation efforts."  FAC ¶¶ 157-58.  This argument is without any basis in law.  Perlwitz and Schachtner owed no duty to reject employment with Transpire.  Moreover, to the extent Dr. Zeng breached any contractual obligation he purportedly owed (which he did not) by soliciting them, that theoretical breach would have been "complete" when the solicitation occurred—regardless of whether the offer was accepted.

---

[5]   It is unclear to Defendants whether "aiding and abetting breach of contract" is even a cause of action under Florida law.  Defendants were not able to find a single Florida appellate court acknowledging a right to relief for a claim of "aiding and abetting breach of contract."  To the extent the cause of action exists at all, clearly it fails where (as here) it is unsupported by any factual allegations, and no claim for an underlying breach of contract can be stated.

Finally, Plaintiffs' attempt to transform a non-solicitation clause in Dr. Zeng's employment contract into a no-poach agreement spanning the entire Transpire entity violates antitrust law and is therefore illegal and void, as discussed in greater detail below.

**VII.** **Plaintiffs' Count for Tortious Interference with Contractual Relationship Fails.**

The FAC contains no factual allegations that establish that Perlwitz, Schachtner, or Transpire tortiously interfered with Dr. Zeng's contractual relationship with Plaintiffs. The FAC's count for tortious interference cites only two allegations to support the count: (1) that Transpire tortiously interfered with LAHSA's contractual relationship with Dr. Zeng by "knowingly hiring and continuing to employ Perwitz [sic], Schachtner, and the Former Employees in violation of Zeng's agreement with LAHSA"; and (2) that Perlwitz and Schachtner tortiously interfered with LAHSA's contractual relationship with Dr. Zeng by "accepting employment with Transpire and/or Smoore, therefore completing Zeng's solicitation efforts." FAC ¶¶ 164-65. In other words, Plaintiffs allege that because Dr. Zeng had a non-solicitation provision in his former employment contract with Lupin, Transpire was legally barred from hiring former Lupin employees, and former Lupin employees (such as Perlwitz and Schachtner) were legally barred from accepting employment with Transpire.

This cause of action fails as a matter of law. "Under Florida law, the elements of a tortious-interference-with-contract claim are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *VVIG, Inc. v. Alvarez*, 2019 WL 5063441, at *6 (S.D. Fla. Oct. 9, 2019). Plaintiffs fail to satisfy the third and fourth elements of this claim. Specifically, the FAC does not include a single specific factual allegation establishing that Transpire, Perlwitz, or Schachtner "procure[d]" any breach of contract by Dr. Zeng. On the contrary, the FAC seems to allege that all of the relevant actions were taken by Dr. Zeng. Plaintiffs therefore fail to plead the elements of the claim. Further, Plaintiffs cannot establish the absence of any justification or privilege. Under Florida law, competition privilege bars any claim for tortious interference "where the action complained of is undertaken to safeguard or promote one's financial or economic interest." *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986).

Moreover, Plaintiffs' counts for aiding and abetting contract and tortious interference with contract fail for more fundamental reasons. With these counts, Plaintiffs attempt to enforce the

18

non-solicitation clause in Dr. Zeng's former employment agreement as a no-poach agreement precluding Transpire from attempting to poach Lupin's employees, and precluding Lupin employees from accepting employment with Transpire. However, such a no-poach agreement between competitors is illegal under federal antitrust law. *See* Dep't of Justice Antitrust Division & Federal Trade Commission, *Antitrust Guidance for Human Resource Professionals* (Oct. 2016) ("[N]o-poaching agreements among employers, whether entered into directly or through a third-party intermediary, are per se illegal under the antitrust laws. That means that if the agreement is separate from or not reasonably necessary to a larger legitimate collaboration between the employers, the agreement is deemed illegal without any inquiry into its competitive effects.").

Because no-poach agreements are illegal, they are void and unenforceable under Florida law. *See, e.g.*, *Local No. 234 v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821 (Fla. 1953) ("[A]n agreement that is violative of … a valid statute, or an agreement which cannot be performed without violating such a … statutory provision, is illegal and void. And when a contract or agreement, express or implied, is tainted with the vice of such illegality, no alleged right founded upon the contract or agreement can be enforced in a court of justice."). Thus, while Plaintiffs' counts for aiding and abetting breach of contract and tortious interference fail for other reasons, the claims would be barred even if Plaintiffs had adequately stated a claim.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court enter an Order granting this motion to dismiss, dismissing the FAC, and awarding such other relief as the Court deems just and proper. Further, because Plaintiffs have already amended once, the court-ordered deadline to amend pleadings has elapsed, and any further amendments would be futile, the dismissal of the FAC should be with prejudice. *See, e.g.*, *Kantrow v. Celebrity Cruises Inc.*, 533 F. Supp. 3d 1203, 1220 (S.D. Fla. 2021) (dismissing claim with prejudice "[b]ecause leave to amend would be futile, and because, in any event, the deadline to amend pleadings expired several months ago").

## REQUEST FOR HEARING

Defendants hereby request a one-hour hearing on this Motion. Defendants believe brief oral argument will assist the Court in analyzing the numerous legal authorities and pertinent factual allegations addressed in the Motion, which seeks dismissal of claims arising under federal statute, state statute, and common law, as to four different Defendants.

19

Dated: February 9, 2024

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  /s/  *Samuel G. Williamson*

Samuel G. Williamson
Florida Bar No. 1033817
samwilliamson@quinnemanuel.com
David L. Bilsker
Florida Bar No. 861197
davidbilsker@quinnemanuel.com
Joshua T. Fordin
Florida Bar No. 125219
joshuafordin@quinnemanuel.com
2601 S. Bayshore Drive, Suite 1550
Miami, Florida 33133
Telephone: (305) 402-4880

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2024, a true and correct copy of the foregoing document was electronically mailed to all counsel of record.

By:  /s/  *Samuel G. Williamson*

Samuel G. Williamson
Florida Bar No. 1033817

20