## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-61621-CIV-DAMIAN/Reid

**LUPIN ATLANTIS HOLDINGS SA**, *et al.*,

      Plaintiffs,

v.

**XIAN-MING ZENG**, *et al.*,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT [ECF NO. 39]

**THIS CAUSE** is before the Court upon Defendants, Xian-Ming Zeng, Transpire Bio, Inc., Axel Perlwitz, and William Schachtner's (collectively, "Defendants"), Motion to Dismiss Plaintiffs' First Amended Complaint [ECF No. 39] (the "Motion to Dismiss"), filed February 9, 2024.

THE COURT has reviewed the Motion to Dismiss, the Response [ECF No. 49] and Reply thereto [ECF No. 53], the pertinent portions of the record, and the relevant authorities and is otherwise fully advised. The Court also heard argument from the parties who appeared before the undersigned on September 16, 2024. For the reasons that follow, and as further detailed on the record at the hearing, the Motion to Dismiss is granted in part and denied in part.

## I.  BACKGROUND

The following facts are stated as alleged by Plaintiffs, Lupin Atlantis Holdings SA ("LAHSA") and Lupin Inc. (collectively, "Lupin" or "Plaintiffs"), in the First Amended

Complaint. [ECF No. 31 ("Amended Complaint")]. For purposes of considering the Motion to Dismiss, the allegations in the Amended Complaint are taken as true and construed in the light most favorable to Lupin. *See Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018).

Lupin and its affiliated entities are a group of companies that develop and market an array of pharmaceutical products sold globally. Am. Compl. ¶¶ 2, 24. In 2013, Lupin hired Zeng to lead a team of research and development professionals to grow Lupin's inhaled pharmaceutical product division. *Id.* ¶¶ 2, 41. In connection with his employment with Lupin, Zeng signed an employment agreement that included non-solicitation and confidentiality provisions. *Id.* ¶¶ 2, 42, 50–51, 53.

The events that gave rise to this lawsuit began in April 2021, when non-party Smoore International Holdings Ltd. ("Smoore"), a global leader in electronic cigarette manufacturing, contacted Zeng regarding a potential collaboration between Lupin and Smoore to adapt and optimize Smoore's vaping technology with Lupin's inhalation pharmaceutical drug business. *Id.* ¶ 4. According to Lupin, Zeng never disclosed this contact nor the business opportunity to Lupin's board of directors and, instead, usurped the opportunity with Smoore for himself. *Id.* ¶ 5.

In August 2021, four months after Smoore allegedly contacted Zeng, Zeng submitted a resignation letter informing Lupin that he accepted a position at a non-pharmaceutical company in China in order to spend more time with his family. *Id.* ¶¶ 6, 64, 66. Lupin claims Zeng was actually planning to launch Transpire, a competing business to Lupin which is wholly owned by Smoore. *Id.* ¶ 7. Lupin alleges that since leaving Lupin and starting Transpire, Zeng has poached ten Lupin executives and scientists to work for Transpire. *Id.* ¶

8. Lupin alleges that in addition to poaching Lupin employees and usurping Lupin's business opportunity, Zeng copied Lupin's confidential information and trade secrets to external devices and to a cloud storage account. *Id.* ¶¶ 10–12. Zeng then allegedly covered his tracks by using a software cleaning tool and deleting all emails from his company laptop. *Id.* All of this was allegedly done while Zeng was still employed by Lupin. *Id.*

A year after Zeng's resignation, on August 22, 2023, Lupin filed the instant lawsuit against Zeng, Transpire, and two former Lupin executives, Perlwitz and Schachtner. [ECF No. 1]. In the operative Amended Complaint, filed on January 12, 2024, Lupin asserts eight causes of action and seeks damages and injunctive relief for: misappropriation of trade secrets against Zeng and Transpire (Counts I and II); breach of contract and breach of fiduciary duty against Zeng (Counts III and IV); civil conspiracy against all Defendants (Count V); breach of fiduciary duty and aiding and abetting breach of contract against Perlwitz and Schachtner (Counts VI and VII); and tortious interference with contractual relationship against Transpire, Perlwitz, and Schachtner (Count VIII). [ECF No. 31].

On February 9, 2024, Defendants filed the Motion to Dismiss now before the Court. [ECF No. 39]. Lupin filed a Response on March 7, 2024. [ECF No. 49], and Defendants filed a Reply on March 18, 2024 [ECF No. 53]. The Motion to Dismiss is fully briefed and ripe for adjudication, and the Court has had the benefit of oral argument from counsel.

## II.   LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 8(a)(2) also requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation and quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), courts must accept the non-moving party's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, this tenet does not apply to legal conclusions, as courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III. ANALYSIS

In the Motion to Dismiss, Defendants argue that Lupin's Amended Complaint should be dismissed in its entirety for failure to state a claim. The Court addresses the specific grounds for dismissal as to each of the eight counts and the parties' arguments as to each below.

**A.** ***Misappropriation Of Trade Secret Claims Against Zeng And Transpire (Counts I and II).***

In the Amended Complaint, Plaintiffs allege two parallel claims for misappropriation of trade secrets against Zeng and Transpire, one under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count I), and the other under the Florida Uniform Trade Secrets Act ("FUTSA"), §§ 688.001–688.009, Fla. Stat. (Count II). Am. Compl. at 23–27.

Defendants argue that Lupin fails to state claims for trade secret misappropriation under the DTSA and the FUTSA because Lupin fails to: (1) allege an actual misappropriation within the meaning of the statutes; and (2) identify the alleged trade secrets with sufficient particularity. In their Response, Plaintiffs argue they sufficiently allege that Defendants misappropriated trade secrets under both statutes and sufficiently identified the trade secrets in their Amended Complaint.

**1.  The DTSA And The FUTSA.**

To bring a viable claim under the DTSA, a plaintiff must plausibly allege that it (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff and (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information," despite (iii) "a duty to maintain its secrecy." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018). Similarly, "[t]o prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018).

Under the FUTSA, a "trade secret" is defined as information that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 668.002(4)(a)–(b), Fla. Stat. Thus, to qualify as a "trade secret" under the FUTSA, a plaintiff must allege that the information "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." *Id.* § 688.002(4). And, the alleged trade secret information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* A "trade secret" is defined similarly under the DTSA and in terms of the same two (2) general requirements. *See* 18 U.S.C. § 1839(3). The Eleventh Circuit has acknowledged that DTSA and FUTSA claims "largely mirror[ ]" each other. *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020). Therefore, this Court considers the DTSA and FUTSA claims and Defendants' challenges thereto together.

### 2. Whether The Amended Complaint Sufficiently Identifies The Trade Secrets.

Courts adjudicating FUTSA and DTSA cases require a plaintiff to "identify with reasonable particularity the trade secrets at issue before proceeding with discovery." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016). "However, to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *Id.* (citing *Twombly*, 550 U.S. at 555–56; other citations

omitted). To state a claim with "sufficient particularity," a plaintiff must nevertheless do more than merely "identify broad categories of information, such as financial and technical data." *Id.* at 849.

Defendants contend that Plaintiffs' trade secret claims are inadequate because they fail to identify "a single specific trade secret" in the Amended Complaint. Mot. at 9–11. According to Defendants, Plaintiffs provide no specifics about which of the hundreds of documents that Zeng allegedly accessed contain trade secrets or even what those trade secrets are. *Id.*

In the Amended Complaint, Plaintiffs define the trade secrets at issue as the "product formulations and development information, product inventions and plans, profit information, proprietary manufacturing processes, FDA approval guidance, current and prospective customer and vendor lists and related databases, equipment lists, pricing data, purchasing histories, consumer data, market intelligence and strategies, and overall industry and product expertise." Am. Compl. ¶ 31. Plaintiffs also allege these trade secrets "derive independent economic value" from not being generally known to the public. *Id.* ¶¶ 107, 116.

Defendants contend Plaintiffs' allegations include "a sweeping and legally insufficient category" of trade secrets. This Court disagrees. Courts consistently find that customer lists and pricing information constitute trade secrets. *See, e.g.*, *Marlite, Inc. v. Eckenrod*, No. 09-22607-Civ, 2011 WL 39130, at *5 (S.D. Fla. Jan. 5, 2011) (Torres, J.) (concluding customer lists and pricing information are trade secrets), *aff'd sub nom. Marlite, Inc. v. Am. Canas*, 453 F. App'x 938 (11th Cir. 2012); *Johnson Controls, Inc. v. Rumore*, No. 8:07-cv-1808, 2008 WL 203575, at *5 (M.D. Fla. Jan. 23, 2008) (finding a legitimate interest in "customer lists, business, service and maintenance plans, sales, revenue and financial information, including

pricing information"). In any event, "whether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side.'" *Compulife Software, Inc.*, 959 F.3d at 1311 (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978)).

Defendants rely on *Taxinet, Corp. v. Leon*, a decision in which another court in this District found that allegations of "confidential business information, processes and techniques, software applications, and business characteristics, including present, future and proposed services and business model" were inadequate because they "only indicate broad categories of information.'" *Taxinet, Corp. v. Leon*, No. 16-24266-CIV, 2018 WL 3405243 at *3 (S.D. Fla. July 12, 2018) (Moreno, J.). Plaintiffs' allegations here are not as generalized as those in *Taxinet*. Review of the allegations in the Amended Complaint reveals they are more akin to allegations in cases in which courts have found the reasonable particularity requirement satisfied. *See e.g., DynCorp Int'l.*, 664 F. App'x at 849 ("The amended complaint did not just identify broad categories of information, such as financial and technical data, but specifically identified financial and technical data related to DynCorp's pre-existing WASS contract . . . and pricing data related to staffing and business operations."); *NPA Assocs., LLC v. Lakeside Portfolio Mgmt, LLC*, No. 12-23930-CIV, 2014 WL 714812 at *3 (Moreno, J.) (allegations regarding "proprietary calculations, assessments, and/or formulas related to investment viability" identified trade secrets with reasonable particularity).

Likewise, Plaintiffs also adequately allege what trade secrets Zeng allegedly misappropriated. The Amended Complaint alleges Zeng copied onto an external storage device several documents containing the trade secrets at issue. Am. Compl. ¶ 97. The pleading identifies specific documents and dates Zeng allegedly misappropriated them. *Id.* At this stage

of the proceedings, further specificity is not required. *See NPA Assoc.*, 2014 WL 714812 at *3 (rejecting defendant's theory that plaintiffs "must specifically identify the calculations, assessments, or formulas misappropriated in order to comply with its burden").

Therefore, this Court concludes that Plaintiffs have sufficiently alleged the trade secrets at issue.

### 3. Whether The Amended Complaint Sufficiently Alleges That Plaintiffs Took Reasonable Steps to Maintain Secrecy Of Its Information.

Plaintiffs allege that Lupin requires all employees to enter into written confidentiality agreements before granting access to Lupin's trade secret information. Am. Compl. ¶ 40. As further alleged in the Amended Complaint, Lupin takes reasonable and necessary steps to maintain the confidentiality of its trade secrets, including implementing policies with respect to the confidential information, prohibiting employees from copying, removing, using, or disclosing Lupin's confidential information, locking its physical facilities and requiring the use of a trackable keycard for access, and limiting access to Lupin's network to ensure its confidential information and trade secrets are accessible on a need-to-know basis only. *Id.* ¶¶ 33–39. These allegations are sufficient to establish that Lupin "took reasonable measures" to keep its trade secrets from being publicly known.

### 4. Whether The Amended Complaint Sufficiently Alleges Defendants Misappropriated Lupin's Trade Secrets.

Defendants contend that Plaintiffs have not satisfied their obligation to plead facts demonstrating that Zeng acquired any of Lupin's trade secrets by improper means or that he even used Lupin's trade secrets. In Response, Plaintiffs assert Zeng misappropriated Lupin's trade secrets under the DTSA and the FUTSA by breaching a duty to uphold Lupin's confidential information and by downloading Lupin's trade secrets onto an external storage

device during the final weeks of his employment in order to give Transpire an "unfair competitive edge" against Lupin.

As noted above, both the DTSA and the FUTSA define "misappropriation" of a trade secret as: (1) acquisition of another's trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret without consent by a person who used improper means to acquire the trade secret or knew that the trade secret was improperly acquired. 18 U.S.C. § 1839(5)(A); § 688.002, Fla. Stat. These statutes further define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); § 688.002(1), Fla. Stat.

Plaintiffs have adequately alleged that Zeng misappropriated Lupin's trade secrets through a breach of a duty to maintain secrecy. The Amended Complaint alleges that Zeng had a duty to uphold Lupin's confidential information and that he breached that duty by downloading Lupin's trade secrets onto an external storage device during the final weeks, and even on the final days, of his employment. Am. Compl. ¶¶ 97–98. Plaintiffs also allege that Zeng attempted to "hide evidence of his misappropriation" by utilizing a computer software cleanup tool and "delet[ing] all items from his Outlook account on his company issued laptop." *Id.* ¶ 99. These allegations are sufficient to meet the definition of misappropriation under both statutes at this stage of the proceedings. *See, e.g.*, *Hayes Med. Staffing, LLC v. Eichelberg*, No. 0:23-cv-60748, 2024 WL 670440, at *7 (S.D. Fla. Jan. 23, 2024) (Gayles, J.) ("The timing of Eichelberg's emails (two *days* before her resignation), how she sent them to herself (via *blind* copy and without permission), and her attempt to delete evidence of what she had done (by deleting emails from the sent and permanent deletion folders) constitutes

strong evidence of her intentional misappropriation of Jobot's trade secrets."). Moreover, while not defined in the statute, the bar for what counts as "use" of a trade secret is generally low. *See Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) ("[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" (quoting Restatement (Third) of Unfair Competition § 40 cmt. c (1995))).

Insofar as Plaintiffs' misappropriation claims are directed against Transpire in Counts I and II, Plaintiffs allege that Zeng utilized Lupin's trade secrets "for personal gain and/or for the benefit of Transpire." Am. Compl. ¶¶ 111, 120; *see also id.* ¶ 10 ("In the final months of Zeng's employment, Zeng copied Lupin's confidential information and trade secrets to external devices and to a cloud storage account, presumably to give Transpire a competitive advantage over Lupin."). Thus, reading the Amended Complaint as a whole, Plaintiffs allege that Transpire acquired Lupin's trade secrets through Zeng.

Therefore, Plaintiffs have adequately alleged a claim for misappropriation of Lupin's trade secrets against Defendants Zeng and Transpire under the DTSA and the FUTSA, and Defendants' Motion to Dismiss is due to be denied as to these claims.

## B. *Breach of Contract Against Zeng (Count III).*

In Count III, Plaintiffs allege Zeng breached the restrictive covenants in his employment agreement, that is, the non-solicitation and confidentiality provisions. The Amended Complaint alleges that, in April 2013, Zeng entered into an employment agreement with Lupin Pharmaceuticals, Inc. ("LPI"), a non-party to this action. Am. Compl. ¶ 42. LPI then assigned its rights and obligations under the employment agreement to Lupin GmbH ("GmbH"). *Id.* ¶ 43. Thereafter, GmbH merged with Plaintiff LAHSA, transferring all of

GmbH's assets and liabilities, including the employment agreement with Zeng, to LAHSA by way of merger. *Id.* ¶ 44.

Defendants argue the restrictive covenants are not enforceable by Plaintiff LAHSA because Zeng executed his employment agreement with LPI and then executed a separate agreement to assign the employment agreement to GmbH, not to LAHSA. Defendants aver that Section 542.335(1)(f)(2), Florida Statutes, prohibits the enforcement of the restrictive covenants by LAHSA. According to Defendants, LAHSA is not the original signatory to the employment agreement and the agreement does not expressly authorize enforcement by a party's assignee or successor under Section 542.335(1)(f)(2), which governs the enforceability of restrict covenants by a party's assignee or successor in Florida. Mot. at 10–11.

Plaintiff LAHSA responds it has standing to enforce the restrictive covenants contained in Zeng's employment agreement. LAHSA asserts that Zeng, as a signatory to the assignment between non-parties LPI and GmbH, expressly agreed to assign "all of the right[s] and obligation[s] pursuant to the Employment Agreement" to GmbH. Once GmbH merged with LAHSA, all of GmbH's assets, including the employment agreement at issue, were transferred to LAHSA, and no additional assignment or contractual consent from Zeng was required in order for LAHSA to enforce the employment agreement. LAHSA further contends that even if the merger negates the enforceability of the restrictive covenant, the breach of contract claim should survive dismissal to the extent it pertains to Zeng's failure to return company property because that provision is not a restrictive covenant governed by Section 542.335. Resp. at 11.

**1.  Whether LAHSA Has Standing to Enforce the Restrictive Covenants.**

Florida law provides that a court "shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is . . . an assignee or successor to a party to such contract, provided . . . the restrictive covenant expressly authorized enforcement by a party's assignee or successor." § 542.335(1)(f)(1), Fla. Stat. Plaintiff LAHSA asserts this provision of Florida law permits a court to enforce a restrictive covenant if the parties have agreed to and contracted to allow enforcement of the contract by a successor party. In support of this argument, LAHSA primarily relies on *Johnson Controls, Inc. v. Rumore*, No. 8:07–cv–1808–T–17TBM, 2008 WL 203575 (M.D. Fla. Jan. 23, 2008).

In *Johnson Controls*, the Magistrate Judge opined that "[a] plain reading of [Section 542.335, Florida Statutes,] is that *if* a noncompetition agreement contains an express authorization for enforcement by a successor, the court 'shall not refuse enforcement' of the contract." *Id.* at *7. The Magistrate Judge further found that under Florida statutes governing commercial transactions, the surviving corporation of a merger "shall have all the rights, privileges, immunities and powers, and shall be subject to all the duties and liabilities" of the merged corporation. § 607.1106, Fla. Stat. Thus, the Magistrate Judge found that in an acquisition by way of a 100% stock purchase, the non-compete agreement was enforceable by the surviving corporation of a merger, notwithstanding the absence of an express provision providing for non-party enforcement. *Id.*; *see also Thyssenkrupp Elevator Corp. v. Hubbard*, No. 2:13-cv-202-FtM-29UAM, 2013 WL 3242380, at *2 (M.D. Fla. June 25, 2013) (finding *Johnson Controls* persuasive in its finding that a restrictive covenant is enforceable by a surviving corporation of a merger by 100% stock purchase).

Furthermore, in *Corporate Express Office Prods. v. Phillips*, 847 So. 2d 406, 414 (Fla. 2003), the Florida Supreme Court held that a non-compete provision may be enforced by a successor corporation, without the need for an assignment, in three scenarios:

> (1) a 100 percent stock purchase in which the corporate entity is unchanged except for a change in management; (2) a corporate merger in which two corporations unite into a single corporation and the surviving corporation assumes the rights and liabilities of the merging corporation; or (3) where a corporation merely undergoes a name change[.]

*Id.* at 411–14.

Here, the Amended Complaint alleges that GmbH merged with Plaintiff LAHSA in April 2020. FAC ¶ 44. This Court agrees with the reasoning in *Johnson Controls* and finds that the restrictive covenants at issue are enforceable by LAHSA, as the surviving corporation, by way of merger.

### 2. Whether LAHSA Sufficiently Alleges a Breach of Contract Claim Against Zeng.

To state a claim for breach of contract, Florida law requires a plaintiff to plead "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

In the Amended Complaint, LAHSA alleges the employment agreement (1) "prohibited Zeng from soliciting, inducing, or influencing" Lupin employees "to leave or alter their employment" with Lupin; (2) "required Zeng to keep Lupin's information confidential and to refrain from disclosing, copying, or otherwise misappropriating Lupin's information"; and (3) required Zeng to "return all Lupin property in his possession in the event of a termination of employment." Am. Compl. ¶¶ 126–28. The pleading further alleges Zeng has breached all these obligations under the employment agreement by soliciting Lupin's

14

employees within the restrictive period, retaining Lupin's confidential and proprietary information after his employment with Lupin ended and failing to return same to Lupin, and disclosing Lupin's confidential and proprietary information to Transpire. *Id.* ¶¶ 129–131.

This Court is satisfied that LAHSA has sufficiently pled the requirements for a breach of contract claim against Zeng in Count III.

### C. *Breach of Fiduciary Duty Against Zeng (Count IV) And Against Perlwitz And Schachtner (Count VI).*

In Counts IV and VI, Plaintiffs assert breach of fiduciary duty claims against Zeng, Perlwitz, and Schachtner. Fiduciary relationships are either expressly or impliedly created. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). When a fiduciary relationship has not been created by an express agreement, the question of whether the relationship exists generally depends "upon the specific facts and circumstances surrounding the relationship of the parties in a transaction in which they are involved." *Collins v. Countrywide Home Loans*, 680 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010) (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003)). In the employment context, Florida courts hold that:

> an employee does not violate his duty of loyalty when he merely organizes a corporation during his employment to carry on a rival business after the expiration of his employment. However, that employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment.

*Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981); *accord New World Fashions, Inc. v. Lieberman*, 429 So. 2d 1276, 1277 (Fla. 1st DCA 1983); *Connelly v. Special Rd. & Bridge Dist. No. 5*, 126 So. 794, 798 (1930). Importantly, Florida law recognizes that "[c]orporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act

in good faith and in the best interest of the corporation." *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA 1992).

### 1. Breach of Fiduciary Duty Claim Against Zeng.

In Count IV, Lupin alleges Zeng breached his fiduciary duty to Lupin by (1) "failing to disclose the corporate opportunity with Smoore to create a collaboration between the two companies, and eventually usurping that opportunity for himself"; and (2) "soliciting Lupin (and its affiliates) employees during and after his employment." Am. Compl. ¶¶ 137–38.

Defendants argue that Plaintiffs fail to allege the existence of a fiduciary duty owed by Zeng to Lupin. As to the allegations regarding Zeng's solicitation efforts during his employment with Lupin, Defendants argue that the only non-conclusory factual allegation in the Amended Complaint concerning Zeng's "access[ing] the resumes of Lupin employees in his Lupin issued laptop" (Paragraph 82) is not sufficient to support a breach of any fiduciary duty.  Mot. at 13. According to Defendants, there are "obvious alternative explanations" for why Zeng was reviewing the resumes of current Lupin employees. *Id*. Defendants also argue that Plaintiffs' breach of fiduciary duty claim against Zeng should be dismissed because Zeng did not owe a fiduciary duty of loyalty as he was not a Lupin employee when the alleged solicitations occurred–after his resignation. Mot. at 12. Defendants further argue the breach of fiduciary duty claim is barred by the independent tort doctrine because Plaintiffs' fiduciary duty claim overlaps with their breach of contract claim against Zeng. *Id.* at 15.

Plaintiffs respond that they have alleged a breach of fiduciary duty with respect to Zeng's usurpation of Lupin's corporate opportunity with Smoore. Specifically, Plaintiffs assert they have adequately pled the existence of a duty by alleging that Zeng, as Executive Vice President of Lupin, owed a fiduciary duty "to act in the best interests of Plaintiffs and

devote his full time and energy to Plaintiffs' business." Am. Compl. ¶ 136. Plaintiffs contend a fiduciary duty encompasses a duty of loyalty which seeks to prevent employees from acting against the best interests of his or her employer or acting in a way that would reap a personal benefit and make it unavailable to the employer.

In the Amended Complaint, Plaintiffs allege Zeng held the title of Executive Vice President from June 2016 through his resignation on October 1, 2021. Am. Compl. ¶ 46. Between April 2021 and June 2021, Zeng (on behalf of Lupin) began negotiations and discussions with a Smoore representative about a potential business collaboration. *Id.* ¶¶ 55–60. Plaintiffs allege Zeng never disclosed the potential business opportunity with Smoore to Lupin's board of directors and, instead, usurped that business opportunity for himself. *Id.* ¶¶ 62–63.

Thus, Plaintiffs allege that Zeng was an executive officer prior to April 2021, when Zeng began communicating with Smoore about the business collaboration, and Plaintiffs' allegations suggest that a duty was impliedly created based on Zeng's executive position at Lupin. This Court finds that the allegations are sufficient to plausibly suggest that Zeng owed a fiduciary duty to Plaintiffs and that such duty was breached. *See, e.g.*, *Sotelo v. Interior Glass Design*, No. 16-24224-Civ, 2017 WL 7796316, at *8–10 (S.D. Fla. July 17, 2017) (Torres, J.) (denying motion to dismiss breach of fiduciary duty claim where plaintiff plead that employee was "[s]ecretly usurping business opportunities which belonged to [employer] (without authorization or permission from [employer]) for his own unauthorized personal gain at [employer's] expense"). Therefore, Plaintiffs' breach of fiduciary duty claim against Zeng is sufficiently pled.

### 2. Breach of Fiduciary Duty Against Perlwitz and Schachtner.

In Count VI, Lupin alleges Perlwitz and Schachtner breached their fiduciary duties to Lupin by (1) "co-funding a competing business while employed by Lupin"; and (2) "facilitating Zeng's misappropriation of Lupin's confidential information and trade secrets and Transpire's use of same." *Id.* ¶¶ 151–52.

Defendants argue the Amended Complaint fails to allege a breach of fiduciary duty on the part of either Perlwitz or Schachtner. Plaintiffs respond that their claim for breach of fiduciary duty against both Perlwitz and Schachtner is sufficient. Like the allegations against Zeng, Lupin asserts Perlwitz and Schachtner had a fiduciary duty to act in the best interest of Lupin, including protecting Lupin's confidential and proprietary business information and devoting their full-time and energy to Lupin's business. Resp. at 16. Lupin alleges Perlwitz and Schachtner both breached these duties when they co-founded Transpire while they were on Lupin's payroll.

In *National Railroad Passenger Corporation v. Veolia Transportation Services, Inc.*, the D.C. District Court explained, "[A]cts that . . . constitute *actual* competition include solicitation of business for an employee's personal endeavor, which otherwise the employee had an obligation to obtain for an employer, competing with the employer for customers or employees, and employee behavior leading to the mass resignation of the employer's workforce." 791 F. Supp. 2d 33, 49 (D.D.C. 2011) (emphasis in original). This Court agrees that such conduct constitutes competition sufficient to cause a breach of fiduciary duty. *See also ABC Trans Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 20 Ill. Dec. 160, 379 N.E.2d 1228, 1237 (1978) (holding that it was a breach of the duty of loyalty for

employee to continue working for original employer after establishing a personal venture that competed with employer).

As such, the Court finds that the allegations in the Amended Complaint are sufficient to state a claim for breach of fiduciary duty against both Perlwitz and Schachtner.

### D. *Civil Conspiracy Claim Against All Defendants (Count V).*

In Count V, Plaintiffs allege Defendants are parties to an "agreement to unfairly compete with Lupin" and that Defendants "conspired and agreed to use confidential information and trade secrets wrongfully obtained by Zeng from Lupin and to solicit Lupin's employees in order to give Transpire a competitive edge over Lupin." Am. Compl. ¶¶ 142–43.

Under Florida law, the elements of civil conspiracy include: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means; (3) the doing of some overt act to further the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy." *W.P. Prods., Inc. v. Tramontina USA, Inc.*, No. 18-63162-CIV, 2019 WL 10092981, at *8 (S.D. Fla. July 30, 2019) (Cohn, J.) (citing *GolTV*, 277 F. Supp. 3d at 1312; *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). Moreover, civil conspiracy is not a stand-alone-claim but rather "the plaintiff must allege an underlying illegal act or tort on which the conspiracy is based." *Id.* (citing *Raimi*, 702 So. 2d at 1284). Additionally, "the Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged." *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, No. 09-23128-CIV, 2010 WL 680905, at *8 (S.D. Fla. Feb. 23, 2010), *aff'd*, 417 F. App'x 892 (11th Cir. 2011) (citation and quotations omitted). Put differently, "[t]he basis for the conspiracy must be an independent wrong or tort

which would constitute a cause of action if the wrong were done by one person." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (internal quotation marks and citation omitted); *see also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1089 (11th Cir. 2004) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage."). Relevant here, "[a] business can be liable for civil conspiracy when it induces another business's employees to breach the duty they owe to their employer." *Werner Enters., Inc. v. Mendez*, 362 So. 3d 278, 282 (Fla. 5th DCA 2023).

Defendants argue the conspiracy claim must be dismissed on grounds Plaintiffs fail to state a claim for any underlying wrong; the civil conspiracy claim is barred by the intra-corporate conspiracy doctrine; and the claim is preempted by the FUTSA because the claim relies on the same misappropriation and solicitation claims. Mot. at 16. Plaintiffs respond that Defendants conspired to breach Zeng's obligations to Lupin under the employment agreement, and, thus, Plaintiffs have alleged an underlying tort sufficient to support their claims for conspiracy; the intra-corporate conspiracy doctrine does not apply in this case because Transpire was founded in April 2022, months after Plaintiffs allege that Zeng misappropriated Lupin's trade secrets; and the conspiracy claim is not preempted by the FUTSA because the wrong underlying each claim is distinct, that is, Plaintiffs' conspiracy claim relies on other wrongful acts separate and apart from the theft of information, including Zeng's solicitation of employees and breaching of his fiduciary duty. Resp. at 19–21.

Review of the allegations in Count V reveals the Amended Complaint does not allege that Defendants entered into an agreement to engage in the allegedly unlawful acts. "An agreement between two or more parties occurs when there is an express or implied agreement

of two or more persons to engage in a criminal or unlawful act." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020) (citation omitted). The pleading alleges that, in furtherance of the alleged conspiracy to unfairly compete with Lupin, Zeng "removed and disclosed confidential information and trade secrets from Lupin regarding Lupin's ongoing products" and "misrepresented the true reasons for his departure from Lupin, in order to give Zeng an opportunity to continue to misappropriate Lupin's confidential information and trade secrets." Am. Compl. at ¶ 145. However, apart from generally alleging that Defendants founded Transpire in order to unfairly compete with Lupin and allegedly solicited Lupin employees to resign their employment with Lupin in order to work for Transpire, the pleading fails to specifically identify what each of the co-conspirators, *i.e.*, Perlwitz, Schactner, and Transpire, actually did to further or assist in the alleged conspiracy. "Each coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (quoting *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)).

Although the Amended Complaint alleges, both in the general allegations and in Count V, that Defendants engaged in, or aided and abetted, some wrongful conduct or should have known that they were engaged in the wrongful conduct, allegations that the co-conspirators were "engaged in the same 'scheme,'" alone, are insufficient to state a claim for civil conspiracy. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (Bloom, J.); *see also Shores Global, LLC v. Njord's Ark A/S*, No. 21-cv-20623, 2023 WL 2838078, at *28 (S.D. Fla. Feb. 3, 2023), *report and recommendation adopted*, 2023 WL 4972787 (S.D. Fla. Mar. 28, 2023).

In short, the civil conspiracy claim is impermissibly vague and inadequate and is due to be dismissed without prejudice for failure to state a claim.

> **E.** ***Aiding and Abetting Breach of Contract Against Perlwitz And Schachtner (Count VII).***

In Count VII, Lupin alleges Perlwitz and Schachtner aided or abetted the breach of Zeng's employment agreement with Lupin by accepting employment with Transpire and encouraging and substantially assisting Zeng's hire of seven former Lupin employees to join Transpire. Am. Compl. ¶¶ 156–59. Defendants argue the Amended Complaint contains no factual allegations that establish Perlwitz and Schachtner aided or abetted the breach of any contract. Specifically, Defendants contend Plaintiffs fail to allege that the former Lupin employees were solicited or hired within the period during which Zeng was allegedly restricted from solicitation under the employment agreement with Lupin. Additionally, Defendants assert there is no authority for a claim of "aiding and abetting the breach of contract" under Florida law. Mot. at 18 n.5.

Plaintiffs respond that Florida courts recognize claims for aiding and abetting a breach of a restrictive covenant by a third party. *See, e.g.*, *Bauer v. DILIB, Inc.*, 16 So. 3d 318, 320 (Fla. 4th DCA 2009) ("[A] plaintiff still may enjoin a third party who aids and abets the violation of a restrictive covenant.").

A claim of aiding and abetting under Florida law requires "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by [the] alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Meridian Tr. Co. v. Batista*, No. 17-23051, 2018 WL 4760277, at *8 (S.D. Fla. Sept. 30, 2018) (Williams, J.) (citation omitted). "In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the

22

defendant had actual knowledge of the underlying wrongdoing." *Id.* (citing *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012)); *Freeman v. JPMorgan Chase Bank N.A.*, 675 F. App'x 926, 934 (11th Cir. 2017).

In Count VII of the Amended Complaint, Plaintiffs allege Perlwitz and Schachtner substantially assisted Zeng's breach of his employment contract with Lupin by accepting employment with Transpire and by encouraging and assisting Zeng's hire of seven Lupin employees. Am. Compl. ¶¶ 158–59. For the knowledge requirement, Plaintiffs allege Perlwitz and Schachtner "knew that at the time Zeng solicited them for employment or to leave Lupin and when they accepted employment with Transpire, that Zeng was prohibited by contract from soliciting any Lupin Employee." Am. Compl. ¶ 157.

This Court finds Plaintiffs' allegations regarding Perlwitz's and Schachtner's actual knowledge of Zeng's contractual obligations to Lupin are too vague to state a claim for aiding and abetting breach of contract. Although Plaintiffs generally allege that Perlwitz and Schachtner knew Zeng was prohibited from soliciting Lupin employees, the allegations in the Amended Complaint reveal that their knowledge was not based on knowledge of the terms of Zeng's contract. Rather, they are alleged to have had general knowledge of employment contracts[1], at most establishing that Perlwitz and Schachtner should have known of the underlying breaches by Zeng. This is not sufficient to support a claim against them. *See generally Lamm*, 889 F. Supp. at 1332–1333; *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL 5514370, *3–4 (S.D. Fla. Nov. 15, 2017). *Cf. Shores Global, LLC*, 2023 WL 2838078, at *24 n.6 (noting plaintiff had plausibly alleged the elements of aiding and abetting

---

[1] *See* Am. Compl. at ¶ 78 ("Upon information and belief, Perlwitz and Schachtner were aware of Zeng's non-solicitation obligations as they owed similar non-solicitation obligations to Lupin by virtue of common law.").

where plaintiff alleged defendant corporation founded by former employee was "aware of the terms of the Agreements between [p]laintiff and [the former employee]" and the defendant corporation "aided and abetted [the former employee's] breaches of those Agreements by facilitating his illegal competition; misappropriation, disclosure, and use of trade secrets; and solicitation of employees, customers, and vendors by providing material assistance and resources to engage in such wrongful conduct").

Thus, the aiding and abetting claim against Perlwitz and Schachtner is impermissibly vague, and Count VII is due to be dismissed without prejudice for failure to state a claim.

### F. *Tortious Interference With Contractual Relationship Against Transpire, Perlwitz, And Schachtner (Count VIII).*

In Count VIII, Plaintiffs allege (1) Defendants, Perlwitz, Schachtner, and Transpire, had knowledge of Zeng's employment agreement with Plaintiff LAHSA; (2) Transpire intentionally interfered with that agreement by hiring Perlwitz and Schachtner, and the former Lupin employees; and (3) Perlwitz and Schachtner intentionally interfered with the same agreement by accepting employment with Transpire. Am. Compl. ¶¶ 162–65.

The elements of a cause of action for tortious interference with a contractual relationship are: (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, [and] (5) damages resulting from the breach." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)).

Defendants argue that Plaintiffs fail to satisfy the third and fourth elements of this claim because the Amended Complaint does not include any factual allegation establishing that Transpire, Perlwitz, or Schachtner procured any breach of contract by Zeng.

24

Like the allegations in the aiding and abetting claim, the Amended Complaint fails to plausibly allege Defendants' actual knowledge of Plaintiff LAHSA's agreement with Zeng. Moreover, the Court finds that Plaintiffs' tortious interference claim is impermissibly pled as a shotgun pleading. Specifically, Plaintiffs have incorporated claims based on the alleged interference by Defendant Transpire with Zeng's employment agreement, in addition to claims based on both Defendants Perlwitz's and Schachtner's alleged interference with Zeng's agreement. "This type of [shotgun] pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts[.]" *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (internal citation omitted); *see Shores Global, LLC*, 2023 WL 2838078, at *25 (dismissing tortious interference claim with business relationships as shotgun pleading).

Therefore, Count VIII, as pled, is due to be dismissed.

**G.** *Lupin's Request For Leave To Amend.*

Plaintiffs have requested an opportunity to amend their pleading should the Court find deficiencies therein. Resp. at 21. As it is well established that courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), this Court finds that Plaintiffs are entitled to an opportunity to correct the pleading deficiencies cited above by the filing of a Second Amended Complaint. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (cleaned up) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."). However, as set forth at the September 16, 2024 hearing and in this Court's written Order of the same date [ECF No. 117], the opportunity to amend does not warrant a further delay of discovery, and, as such, discovery shall proceed notwithstanding the pending amended pleading.

## IV.    CONCLUSION

Accordingly, based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [**ECF No. 39**] is **GRANTED IN PART AND DENIED IN PART**, and **Counts V, VII, and VIII** of the First Amended Complaint are **DISMISSED WITHOUT PREJUDICE**. In the event Plaintiffs intend to file a Second Amended Complaint curing the foregoing deficiencies, they shall do so within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this <u>15th</u> day of October, 2024.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Counsel of record