UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| LUPIN ATLANTIS HOLDINGS SA, a foreign corporation, and LUPIN INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>XIAN-MING ZENG, TRANSPIRE BIO, INC., AXEL PERLWITZ, and WILLIAM SCHACHTNER,<br><br>Defendants. | CASE NO: 0:23-CV-61621-MD |

## AXEL PERLWITZ AND WILLIAM SCHACHTNER'S MOTION FOR SUMMARY JUDGMENT ON COUNT VI (BREACH OF FIDUCIARY DUTY)

Pursuant to Federal Rule of Civil Procedure 56, Defendants Axel Perlwitz and William Schachtner (collectively, "Defendants") file this Motion for Summary Judgment on Count VI against them for Breach of Fiduciary Duty, and state:

### I.      PRELIMINARY STATEMENT

Count VI, for breach of fiduciary duty, seeks to assign liability against Dr. Perlwitz and Mr. Schachtner based on the incorrect notion that these two "co-founded" Defendant Transpire Bio Inc. ("Transpire") while they were still employed at Lupin. They did not.[1] This misimpression derives solely from a misstatement on Transpire's original website, which inaccurately listed these Defendants as "founders."[2] As Defendants have attested, the website was wrong, and was

---

[1] (Defendants' Statement of Undisputed Material Facts ("SMF"), D.E. 196).
[2] (D.E. 31 ¶ 75).

1

corrected accordingly.[3] In reality, Dr. Perlwitz and Mr. Schachtner were just relatively early employees of Transpire, who joined several months after the company's inception.[4]

With discovery complete, Plaintiffs cannot point to any conduct by Dr. Perwlitz or Mr. Schachtner that could possibly qualify as actual competition and indicate a purported breach of their fiduciary duties to Lupin. Florida law is clear that the fiduciary duty of loyalty "does not . . . create a general immunity from competition." *See Harllee v. Prof. Serv. Indus., Inc.*, 619 So.2d 298, 300 (Fla. 3d DCA 1992). An employee does not breach her fiduciary duty by making plans to open a competing business and preparing to compete with the prior employer upon termination of his employment. *See Optio Rx, LLC v. Crestview City Pharmacy, Inc.*, 2023 WL 11762870, *4 (N.D. Fla. June 16, 2023). Any plans Defendants made to leave Lupin and join Transpire and related activities are inactionable, as mere preparations to compete. *See id.* Ultimately, Plaintiffs' gripes against Defendants amount to nothing more than legitimate competitive behavior, consistent with employee free mobility.

Further, Plaintiffs' failure to disclose any damages theory or expert opinion concerning the alleged loss of corporate opportunity or "co-founding" of Transpire is fatal to their ability to establish the related claims, further warranting summary judgment in Defendants' favor. *See, e.g.*, *Browning v. Bay Radiology Assocs. PL*, 2024 WL 3200472, *2 (11th Cir. June 27, 2024) (affirming trial court's exclusion of damages that were not computed in plaintiff's initial disclosures and affirming summary judgment based on plaintiff's consequent inability to prove damages).

## II.   BACKGROUND

Transpire is a pharmaceutical start-up company that develops inhalation medicines. (D.E. 31, Am. Compl. ¶ 16). Transpire is an indirect subsidiary of Smoore International Holdings Limited, a global leader in electronic cigarette and vaping manufacturing. (SMF ¶ 1; D.E. 31, Am. Compl. ¶ 4). Transpire has several generic and branded products in development, but has not yet obtained FDA approval for, marketed, or launched a single product. (SMF ¶¶ 60-66).

Defendant Dr. Xian-Ming Zeng is Transpire's Director and CEO. (SMF ¶ 3; D.E. 31 ¶ 74). Dr. Perlwitz is the Chief Regulatory Affairs Officer for Transpire. (D.E. 31 ¶ 74). Mr. Schachtner is the Chief Technical Operations Officer. (*Id.*). All three Defendants were previously employed

---

[3] (D.E. 31 ¶ 75).
[4] (SMF ¶ 41, 44).

by Lupin. (*Id*.). Specifically, Dr. Zeng was the Executive Vice President of Lupin's inhalation center at Coral Springs. (D.E. 31 ¶ 46). Mr. Schachtner was Lupin's Senior Director of Project and Manufacturing Management before joining Transpire in July 2022. (SMF Ex. 13, Schachtner Tr. 23:17-20). Dr. Perlwitz was Lupin's Senior Director of Regulatory Affairs before joining Transpire in October 2022. (SMF ¶ 44) (citing Ex. 16, Perlwitz Tr. 28:8-11). All three Defendants were at-will employees without non-compete agreements.

At Lupin, Dr. Zeng oversaw the drug development and FDA approval activities for Lupin's Coral Springs inhalation portfolio. (D.E. 31, Am. Compl. ¶¶ 47-48; SMF Ex. 1, V. Gupta Tr. 151:2-9; 50:22-24). On April 20, 2021, Zhiqiang Shi, Global Research and Development Director for Smoore International, contacted Dr. Zeng via email, stating:

> I am reaching out to experts like you in the medical inhalation device/drug formulation industry to explore potential collaborations, consulting, or recommendations of talents in the field to join us in our US R&D team. Smoore sees great potential to adapt and optimize the vaping technology and device in personal well-being and portable healthcare solutions as evidenced by the COVID epidemic.

(D.E. 31, Am. Compl. ¶ 58; SMF ¶ 30).

As Dr. Zeng testified at his deposition, this idea of combining vaping technology and inhaled medicines was "wishful thinking," as the medicines used to treat patients would be destroyed and degraded by a high temperature, not only losing efficacy, but also producing many harmful chemicals. (SMF ¶ 37, Ex. 5 Zeng Tr. 20:18-25, 93:2-24). Although Smoore's initial proposal was a dead-end, Dr. Zeng was ready for a change in his career and decided to explore personal opportunities for him to join Smoore as an executive. (SMF ¶ 30). He ultimately accepted employment with Smoore and moved to China, where he began his work on Smoore's behalf. (*Id.* ¶ 35). Dr. Zeng's last day at Lupin was October 1, 2021. (*Id.*). His employment agreement with Lupin GmbH (the "Agreement") contained a one-year non-solicitation covenant that expired on October 1, 2022. (*Id.* ¶ 19-20).

Dr. Zeng returned to the United States in March 2022, following the death of several family members in China. Transpire was incorporated in Florida on April 12, 2022, (*Id.* ¶ 36, *id.* Ex. 8 (Transpire_0109727), and Dr. Zeng was Transpire's first employee. .

Non-party Dr. Mark Lepore is Transpire's Chief Medical Officer. (SMF ¶ 40). He joined Spectrum Dynamic Research Corp. ("Spectrum"), an affiliate of Smoore International Holdings

3

Ltd., in January 2022. (SMF Ex. 10, Transpire's Responses and Objections to Plaintiffs' Second Set of ROGs at 11). He was employed by Lupin until approximately December 2020, where he was colleagues with Dr. Zeng, Dr. Perlwitz, and Mr. Schachtner. (SMF ¶ 20). Between December 2020 and January 2022, Dr. Lepore worked at another company engaged in pharmaceutical development. (SMF Ex. 32 Lepore Tr. 87:19-21-88:16).

In in the winter of 2021 Dr. Perlwitz began to seek new employment, and applied for jobs at established pharmaceutical companies including Liquidia and Avalyn. (SMF Ex. 21, Dr. Perlwitz's R&Os to Lupin's 1st Set of ROGs at 6). In March 2022, Dr. Perlwitz and Mr. Schachtner were both ready for a chance and each reached out to Dr. Lepore on their own to inquire about potential new career opportunities. (SMF ¶¶ 41, 43). Dr. Perlwitz emailed Dr. Lepore on March 22, 2022, explaining, "I have made the decision that it is time to move on to a new endeavor . . . If you become aware of any leads you may think could be interesting, please do let me know."[5] Mr. Schachtner emailed Dr. Lepore on March 25, 2022, seeking "other career options to better suit my skills" and asking if Dr. Lepore knew of "some company that might have opportunities."[6]

Spectrum subsequently offered them employment. (SMF ¶¶ 41-44). On May 11, 2022, Mr. Schachtner executed an Offer of Employment with Spectrum for the position of Chief Technical Officer, with a start date of July 29, 2022. (SMF ¶ 41, Ex. 12 Transpire_0856020). Mr. Schachtner sent a resignation letter to Lupin on June 15, 2022, effective June 23. (SMF Ex. 10, Transpire's R&Os to Lupin's 2nd Set of ROGs at 16).

On or about May 23, 2022, Dr. Perlwitz informed Lupin that he intended to resign on July 1, 2022. (SMF Ex. 21, Dr. Perlwitz's R&Os to Lupin's 1st Set of ROGs at 7). However, Lupin's President, Sofia Mumtaz, requested that he defer his start date until October 5, 2022. (SMF Ex. 18 Mumtaz Tr. 60:4-12). This date was after the expiration of Dr. Zeng's non-solicitation period and would allow Dr. Perlwitz to remain at Lupin beyond the regulatory approval goal date for tiotropium bromide, a key Lupin milestone.[7] On June 3, 2022, Dr. Perlwitz emailed Ms. Mumtaz and other senior members of Lupin and its Human Resources Department, stating:

> I received a very brief call from the prospective hiring organization on Thursday advising that they wish to move the starting date

---

[5] (SMF Ex. 15 Transpire_0105165).
[6] (SMF Ex. 11 Transpire_0105162).
[7] (SMF Ex. 17 Lupin_0289674 at 676; Ex. 18 Mumtaz Tr. 58:12-62:21).

4

> (provided in the original commitment) to early Q4 2022. I advised the hiring organization that this would be agreeable to me in principle as I have no compelling need for an immediate departure. **In a subsequent discussion with Sofia about this shift I said that this affords the opportunity for me to be here at the goal date for the Tio-US ANDA, which personally I had always hoped for. I further noted that I would want to allow for an additional 6-8 weeks beyond the goal date, in the event that there are any further actions needed for which my experience with the ANDA would be helpful. Of course this would also permit other ongoing procedures on this and other products to come to a close under the same continued oversight. We concluded that this would be reasonable and agreeable.** With that said I will provide a revised end date (from 1 July 2022, to a day in Q4 2022) in the near future, after my return from vacation.

SMF ¶ 46 (Ex. 17 Lupin_0289674.; Mumtaz Tr. 59:15-61:25) (emphasis added).

Ms. Mumtaz testified that:

> A.    I had discussed with Axel to move his goal -- his leaving date, and he had not agreed until I discussed with Xian-Ming about his non-solicitation obligations and reminded him of those. And then Axel came back and -- and agreed to move his date by several weeks. I had told Axel that we wanted him there. He had been the -- the point of contact with FDA on tiotropium ANDA. He knew the status and -- and what the FDA was asking, and it was important for us to get that product approved. So we -- I had requested him to stay, but it was only after my conversation with Xian-Ming that he decided to move his leaving date by six to eight weeks.

(SMF ¶ 46; Ex. 17 Lupin_0289674; Mumtaz Tr. 60:9-61:25).

Dr. Perlwitz ultimately started at Spectrum on October 6, 2022, pursuant to his agreement with Lupin. (SMF ¶ 46; Mumtaz Tr. 69:12-71:1). Ms. Mumtaz was unable to identify anything improper about his departure; rather, she simply stressed his value to Lupin. (*See id*. 71:7-12).

On March 22, 2023, Lupin initiated an action against Dr. Zeng for breach of his non-solicitation agreement and breach of fiduciary duty. *Lupin Atlantis Holdings, Inc. v. Xian-Ming Zeng et al.*, CACE-23-009770 (Broward Cty. Cir Ct. 2023) [D.E. 1]. Lupin did not sue Dr. Perlwitz or Mr. Schachtner at that time. *See id.* That action was ultimately dismissed, and thereafter Plaintiffs filed the instant action.

The First Amended Complaint in the present action [D.E. 31] asserts claims for Breach of Fiduciary Duty (Count VI) against Dr. Perlwitz and Mr. Schachtner, based on allegedly:

1. "Co-founding a competing business while employed by Lupin" (DE. 31 ¶ 151).

Plaintiffs' sole support for this allegation was that "Transpire's website originally represented that Zeng, Perlwitz, and Schachtner were cofounders of Transpire, however, the website was amended to remove the cofounder titles after Defendants received notice of Lupin's claims." (*Id.* ¶¶ 9, 75).

2. "Facilitating Dr. Zeng's misappropriation of Lupin's confidential information and trade secrets and Transpire's use of the same." (D.E. 31 ¶ 152):

The Amended Complaint alleged that Dr. Zeng accessed and removed various files from Lupin when he departed in October 2021. (*Id.* ¶ 96-97). It did not allege any manner in which Dr. Perlwitz or Mr. Schachtner "facilitated" that alleged conduct or any "use" by Transpire of "the same" (and discovery has revealed no such "use" of any Lupin confidential or trade secret information, in any event). (*Id.* ¶¶ 96-97, 152; *see also* Transpire's Motion for Summary Judgment pp.16-17). Rather, even Plaintiffs' scientific expert, Patterson Shafer, was unable to identify "a single example where the information in Transpire's documents and the information in Lupin's documents reflects information that is not generally known and readily ascertainable." (SMF ¶ 78, Ex. 47 Shafer Tr. 188:24-189:2 ("My opinion is that the corpus of documents, alone or separately, we don't know how the information was used."); 193:13-25 ("It is impossible to determine exactly what and how all of the information that has been taken from Lupin has been used. [ ] it's not a worthwhile exercise . . . .we don't know exactly how all of it was used.").

Defendants moved to dismiss Count VI, including because Plaintiffs alleged only "preparation to compete," not actual competition, and because the facilitation allegations were preempted by the Florida Uniform Trade Secrets Act ("FUTSA"). (D.E. 39 at 16-17) (citing *Harllee*, 619 So. 2d at 300 ("mere preparation" to compete does not breach duty of loyalty) and *Surfaces, Inc. v. Point Blank Enterprises, Inc.*, 2022 WL 18956101, *34 (S.D. Fla. Mar. 25, 2022) ("FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information[.]")).

The Court allowed Count VI to survive dismissal based on Plaintiffs' allegations that Dr. Perlwitz and Mr. Schachtner breached their fiduciary duties "when they co-founded Transpire

6

while they were on Lupin's payroll." (D.E. 121 at 18).[8] Although Plaintiffs' well-pled allegations were taken as true at that juncture, today, there can be no genuine dispute that Dr. Perlwitz and Mr. Schachtner did *not* "co-found" Transpire—they were simply relatively early employees. (*See* SMF ¶ 48; Ex. 21 Dr. Perlwitz's R&Os to Lupin's 1st Set of ROGs at 5, 25 (". . . Dr. Perlwitz did not invest any of his own capital into Transpire. When Transpire discovered that Dr. Perlwitz was mistakenly listed on its website as a 'co-founder', it promptly removed the title from the website to maintain accuracy); Ex. 14 Schachtner's R&Os to Lupin's 1st Set of ROGs at 6 ("Schachtner is not a founder of Transpire."); *see also* Ex. 16 Perlwitz Tr. 21:5-22:6 (testifying that he is salaried and does not hold equity in Transpire), 26:12-27:10 (testifying that he did no work for Transpire or Smoore prior to October 2022); Ex. 32, Lepore Tr. 97:14-97:24 (denying that any other company or individual besides Smoore has invested any money in Transpire to date "as a co-founder of Transpire"); *see also* Ex. 5, Zeng Tr. 141:4-141:10 (testifying that he considered himself to be an employee of Smoore, not a founder of Transpire at its inception)). After taking extensive discovery, Plaintiffs have come forward with no evidence to the contrary. Summary judgment on this claim is appropriate.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *PowerSports, Inc. v. Royal & Sunalliance Ins. Co.*, 307 F. Supp. 2d 1355, 1358 (S.D. Fla. 2004), *aff'd sub nom. Powersports, Inc. v. Royal Sunalliance Ins. Co.*, 128 F. App'x 95 (11th Cir. 2005). "[T]he existence of some factual disputes between

---

[8] The Court did not find the allegations concerning unspecified "facilitation" of Dr. Zeng's alleged misappropriation adequate to support breaches of Dr. Perlwitz and Mr. Schachtner's fiduciary duties. *See id.* The Court's preemption discussion with respect to the dismissed Civil Conspiracy claim (Count V) reveals that these allegations did not withstand dismissal and could not defeat summary judgment. Specifically, the Court held that preemption did not apply to Count V to the extent it relied on "other wrongful acts separate and apart from the theft of information, including Zeng's solicitation of employees[.]" *Id.* at 19. On the other hand, the alleged "facilitation" of misappropriation is plainly not distinct from the misappropriation claim, and is therefore preempted by FUTSA. *Surfaces*, 2022 WL 18956101, at *4; *see also* Transpire's Motion for Summary Judgment pp. 16-17 (explaining that Plaintiffs cannot establish any "use" by Transpire of Lupin information); *see also* SMF Ex. 47 (Shafer Tr.) 188:24-189:2.

7

litigants will not defeat an otherwise properly grounded summary judgment motion; 'the requirement is that there be no *genuine* issue of *material* fact.' [ ] Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial." *Tuite v. Carnival Corp.*, 713 F. Supp. 3d 1338, 1344 (S.D. Fla. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[F]acts and theories not raised in the pleadings are not properly considered on motions for summary judgment." *Williams v. Mallet,* 707 F. Supp. 3d 1340, 1356 (S.D. Fla. 2023).

## IV.     ARGUMENT

**A.     Defendants Did Not Breach Any Fiduciary Duty of Loyalty to Lupin.**

Plaintiffs allege that Dr. Perlwitz and Mr. Schachtner breached their duties of loyalty by "co-founding a competing business while employed by Lupin" (DE. 31 ¶ 151). The Amended Complaint's sole basis for this allegation was that "Transpire's website originally represented that Zeng, Perlwitz, and Schachtner were cofounders of Transpire, however, the website was amended to remove the cofounder titles after Defendants received notice of Lupin's claims." (*Id.* ¶¶ 9, 75).[9] The website was indeed amended, *because it was incorrect*. (SMF ¶¶ 42, 48). With discovery complete, it is clear that Defendants did *not* "co-found" Transpire,[10] and Lupin cannot establish any other actual competition by Defendants while they were employed at Lupin that could possibly support a claim for breach of fiduciary duty. *See Optio*, 2023 WL 11762870, at *4.

  i.     <u>The Duty of Loyalty Does Not Prevent Legitimate Competition or Preparation to Compete.</u>

A claim for breach of fiduciary duty requires (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *See Hill v. Nagpal*, 2013 WL 246746, *3 (S.D. Fla. Jan. 22, 2013). Here, Plaintiffs allege that Defendants' fiduciary duty of loyalty is implicated, which requires corporate officers to act in good faith and in the best interest

---

[9] Plaintiffs are confined to their general allegations in this regard. *See Williams,* 707 F. Supp. 3d at 1356 ("Facts and theories not raised in the pleadings are not properly considered on motions for summary judgment.").

[10] SMF ¶¶ 42, 48.

8

of the corporation while employed. *See Taubenfeld v. Lasko*, 324 So. 3d 529, 538 (Fla. 4th DCA 2021).[11]

Importantly, the duty of loyalty does not immunize an employer from any and all competition from employees, for all time, as Lupin's claims would suggest. *See Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC,* 2018 WL 4771060, *2 (M.D. Fla. Oct. 3, 2018). "Generally, absent a noncompete agreement, an employee does not run afoul of this duty by planning to open a competing business or by proceeding to compete with the previous employer through the rival company after terminating his or her employment." *Optio*, 2023 WL 11762870, at *4; *Savis, Inc. v. Cardenas*, 2018 WL 5279311, at *14 (N.D. Ill. Oct. 24, 2018) (quoting *Harllee*, 619 So. 2d at 300). Rather, Florida law—which values employee mobility—is clear that "[a]cts consisting of mere preparation to open a competing business ordinarily do not breach a duty of loyalty. *See, e.g., Optio*, 2023 WL 11762870 at *4; *Tinubu Square Americas Inc. v. Iguarantee, LLC*, 2020 WL 7421382, *8 n. 10 (M.D. Fla. Nov. 25, 2020) ("The development of additional functionality does not necessarily mean Defendants are competing with eSURETY absent additional facts indicative of competition as opposed to preparation to compete."); *Harllee*, 619 So. 2d at 300). The fiduciary duty not to actively compete with the employer terminates upon the end of the employment. *See Taubenfeld*, 324 So. 3d at 539 (explaining that a former agent is free to compete against a former employer (absent a noncompetition agreement to the contrary); *Optio Rx*, 2023 WL 11762870 at *4 (obligation to not solicit employees to leave employer exists only while "still employed there.").

  ii. <u>Defendants Did Not Co-Found Transpire or Otherwise Actively Compete with Lupin During Their Employment.</u>

A short-lived error on a website does not transform Dr. Perlwitz and Mr. Schachtner into co-founders. (D.E. 31 ¶¶ 9, 75). Defendants have attested in their interrogatory responses to the fact that they are *not* co-founders, and Plaintiffs can offer no evidence to the contrary. For example, Dr. Perlwitz's supplemental response to Interrogatory No. 7 (SMF Ex. 21) provides that: "Dr. Perlwitz did not invest any of his own capital into Transpire. When Transpire discovered that Dr. Perlwitz was mistakenly listed on its website as a 'co-founder', it promptly removed the title from the website to maintain accuracy." Mr. Schachtner's supplemental response to Interrogatory No. 1 (SMF Ex. 14) similarly provides, "Schachtner is not a founder of Transpire." Additionally

---

[11] Contrary to Plaintiffs' allegations, an officer has no fiduciary duty to devote his "full time and energy" to the business. *See id.*; Am. Compl. ¶¶ 149-50.

9

"founder" is not a legal term of art, and its temporary use on Transpire's website had no controlling meaning. Indeed, even Dr. Zeng testified that he does not consider himself a literal "founder" of Transpire, in that he was an employee of Smoore at Transpire's inception, does not hold equity in Transpire and did not contribute capital to its creation. (SMF Ex. 5, Zeng Tr. 141:4-141:10). The reality is that Transpire is wholly owned by Smoore, and no other company or individual has invested money to date "as a co-founder of Transpire." (SMF Ex. 32, Lepore Tr. 97:14-97:24). Transpire was incorporated in April, months before Defendants began employment there in July 2022 (Mr. Schachtner) and October 2022 (Dr. Perlwitz). (SMF ¶¶ 41, 44). As a result, Dr. Perlwitz and Mr. Schachtner were not even employed by or present at Transpire's creation, let alone "founders" of the company.

There is nothing inherently improper about Dr. Perlwitz and Mr. Schachtner being among Transpire's first hires. (*Id.*); *Centennial Bank v. Servisfirst Bank Inc.*, 2016 WL 6037539, *4 (M.D. Fla. Oct. 14, 2016) (allegations that defendant "'concealed his alternative plans,'" and "'carefully plann[ed] relocation for himself and his immediate executive teammates,'" could not support a claim for breach of fiduciary duty because "[i]n sum," plaintiff alleged only that defendant "was planning to compete with [plaintiff], which does not state a plausible claim for breach of fiduciary duty."); *see also Harllee*, 619 So. 2d at 300 (holding that opening a bank account and obtaining office space and telephone service were acts of mere preparation to compete, and defendant's "subjective state of mind—his hope or desire" that employees or customers follow him to his new business, were not actionable). Moreover, Plaintiffs can point to no activities they took while employed at Lupin that rise to a level of "actual competition," versus mere preparation to compete. Compare *Optio*, 2023 WL 11762870, at *4 (plaintiff was not likely to succeed on the merits in establishing that defendant breached her duty of loyalty by filing articles of incorporation for competing pharmacy, to which numerous employees subsequently defected) and *Savis*, 2018 WL 5279311, at *14 (defendant did not attempt to lure client away from plaintiff and his efforts to secure a position with client "at most amounted to 'mere preparation to compete,' which would not have violated [his] duty of loyalty, even if he had decided to go out on his own and vie for business with [plaintiff.]") with *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 49, 61 (D.D.C. 2011) (participating in a rival's bid qualified as potential actual competition).

10

In denying Defendants' Motion to Dismiss Count VI, Plaintiffs' allegations were taken as true, but on summary judgment, Plaintiffs must offer evidence that would allow a jury to reasonably infer that Dr. Perlwitz and Mr. Schachtner actually competed with Plaintiffs while employed at Lupin. *See Optio*, 2023 WL 11762870, at *4. They cannot do so. In its Order (D.E. 121 at 18-19), the Court relied primarily upon *National Railroad Passenger Corporation v. Veolia Transportation Services, Inc.* (*see* D.E. 121 at 18), which distinguishes between "actual" active competition during the employee's tenure, versus mere preparation to compete. 791 F. Supp. 2d 33, 49, 61 (D.D.C. 2011). In *National Railroad*, the plaintiff alleged damages related to the loss of a Tri-Rail contract to a competitor. *Id*. at 37. Prior to bidding, the competitor solicited key employees of the plaintiff and included those employees' names in its bid for the contract, while they were still employed by the plaintiff. *Id*. at 42. Meanwhile, those employees refused to be listed as part of the plaintiff's management team for purposes of the bid. *Id*. at 43. The plaintiff claimed that the employees' inclusion in a competitors' bid during their employment breached their fiduciary duties. *Id*. at 43. The court held that this conduct "may ultimately prove to be mere preparation rather than actual competition," but nevertheless created a genuine factual dispute as to the alleged breaches of fiduciary duty. *Id.* at 61. Further, the plaintiff presented evidence on summary judgment that its competitor would not have been a qualified bidder, without listing the plaintiff's employees in its bid, which supported causation of damages. *Id.* at 62.

In contrast, here, Plaintiffs can point to no "actual competition" of Defendants, *i.e*., any act they took that actively undermined Lupin's interests or caused it any losses during their employment. *See id*. (employees are "entitled to make arrangements or plans to go into competition with their principal before terminating their employment.") (*cleaned up*).

Additionally, *National Railroad* emphasized the significance of "whether an employer was given notice that an employee was competing or preparing to compete." *Id.* at 50. Here, Defendants immediately informed Plaintiffs of their intention to resign and join Dr. Zeng's new business, at which time their fiduciary duties would have ended. (SMF ¶ 44; Ex. 13 Schachter Tr. 137:22-138:1); *see Taubenfeld*, 324 So. 3d at 539; *Optio*, 2023 WL 11762870, at *4. Instead of trying to push Defendants out to shield themselves from any potential improper competition, Plaintiffs affirmatively *requested* that Dr. Perlwitz stay on several months beyond his intended date of departure, to help Lupin with its ongoing activities. (SMF ¶ 46; Ex. 18 Mumtaz Tr. 58:15-62:21). Dr. Perlwitz agreed to extend his time at Lupin solely as a result of that request and to be a good

11

steward and help ease Lupin's transition, including by getting Lupin to the regulatory goal date for Tiotropium Bromide before departing. (*Id.*) Staying to help Lupin at Lupin's request cannot reasonably be construed as actual competition amounting to a breach of fiduciary duty; rather, it can only be interpreted as consistent with Dr. Perlwitz's duty to act in Lupin's best interests. For the same reason, Lupin should be equitably estopped from assigning liability to him based on the very arrangement it demanded and which Dr. Perlwitz agreed to at Lupin's request, for Lupin's benefit, and based on its representation that this arrangement was satisfactory. *See United Auto. Ins. Co. v. Chiropractic Clinics of S. Fla., PL*, 322 So. 3d 740, 743 (3d DCA June 2021) (Equitable estoppel is "applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.").

### B. Plaintiffs Cannot Establish Damages Resulting from Defendants' Alleged Breaches of Fiduciary Duty.

Plaintiffs' failure to disclose any damages theory or offer any expert opinion concerning damages purportedly flowing from Defendants' alleged "co-founding" of Transpire independently warrants summary judgment in Defendants' favor on Count VI. *See, e.g.*, *Browning v. Bay Radiology Assocs. PL*, 2024 WL 3200472, at *2 (11th Cir. June 27, 2024) (affirming trial court's exclusion of damages that were not computed in plaintiff's initial disclosures and affirming summary judgment based on plaintiff's consequent inability to prove damages).

It is unclear what damages Plaintiffs could possibly claim based on Transpire's mere existence. This is not, for example, a scenario like *National Railroad*, 791 F. Supp. 2d at 49, in which the plaintiff claimed that improper competition by its employees caused it to lose a bid and sought the value of that bid. Here, Transpire has not even entered the market yet, so is not competing with Plaintiffs for revenue as to any product. (SMF ¶ 66); *cf. Rooney v. Skeet'r Beat'r of Southwest Fla., Inc.*, 898 So.2d 968, 970 (reversing compensatory damages award related to unfair competition on the basis that it was speculative and not supported by substantial, competent evidence, including because it assumed that lost profits were "entirely attributable" to unfair competition, as opposed to legitimate competition or a reduction in plaintiff's sales force). Certainly Plaintiffs cannot argue that their business would be on different footing if Transpire had not accidentally identified Dr. Perlwitz and Mr. Schachtner as co-founders on its website.

In any event, it is not Defendants' or the Court's job to speculate as to what damages theory Plaintiffs might ultimately have been able to concoct based on Dr. Perlwitz and Mr. Schachtner's allegedly improper competition. Rather, Rule 26(A)(1) requires that a plaintiff disclose "a computation of each category of damages claimed and supplement those disclosures promptly if they are incorrect or incomplete." *Browning*, 2024 WL 3200472, at *2 (citing Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1)(A)). Plaintiffs have never provided any computation of damages related to this baseless "co-founder" claim, including in their operative Third Amended Rule 26(A)(1) Disclosures. (SMF Ex. 44). These disclosures simply refer to the opening expert report of Plaintiffs' damages expert, Dawn Hall, who did not provide any damages model or estimate (or any other opinions) with respect to the founding of Transpire or any anticompetitive conduct by Dr. Perlwitz and Dr. Schachtner that would allow for the assessment of liability against them. (*See* SMF Ex. 31, Hall Rpt. ¶ 79). Plaintiffs' failure to date to disclose any computation of damages related to the co-founding of Transpire or any evidence that would support such damages is fatal to this claim. *See* Fed. R. Civ. P. 37(c)(1) (precluding use of information that party failed to disclose pursuant to Rule 26(a) or (e), unless the failure was substantially justified or harmless); *Browning*, 2024 WL 3200472, at *2; *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 288 (2d Cir. 2006) (affirming judgment against plaintiff on corporate opportunity claim and holding that trial court did not abuse its discretion in excluding evidence of lost profits, which were not computed in its initial disclosures); *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1347 (S.D. Fla. 2021) (granting summary judgment against plaintiff for failing to provide damages calculation in its initial disclosures); *Nymbus, Inc. v. Chrome Fed. Credit Union*, 2021 WL 8894791, *7 (S.D. Fla. June 3, 2021) (barring plaintiff from introducing evidence of lost profits at trial based on failure to timely disclose such damages).

## V. CONCLUSION

There is no genuine dispute that Dr. Perlwitz and Dr. Schachtner are *not* co-founders of Transpire and engaged in no other active competition while employed at Lupin that could support a claim for breach of fiduciary duty against them.

WHEREFORE, Defendants Axel Perlwitz and William Schachtner respectfully request entry of an Order granting summary judgment in favor of Defendants and against Plaintiffs with respect to Count VI (Breach of Fiduciary), and any other relief as the Court deems just and proper.

13

| | |
|---|---|
| Dated: March 11, 2025 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |

/s/   *Samuel G. Williamson*
Samuel G. Williamson
Florida Bar No. 1033817
samuelwilliamson@quinnemanuel.com
Shalia M. Sakona
Florida Bar No. 107398
shaliasakona@quinnemanuel.com
Olivia A. Barket Yeffet
Florida Bar No. 1026382
oliviayeffet@quinnemanuel.com
David M. Walsh
Florida Bar No. 1048823
davidwalsh@quinnemanuel.com
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
(305) 402-4880

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005

Nima Hefazi (admitted *pro hac vice*)
nimahefazi@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Andrew G. Shifren (admitted *pro hac vice*)
andrewshifren@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7181

Jocelyn Ma (pending *pro hac vice*)
jocelynma@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document is being filed on March 11, 2025, and served on all counsel of record on the Service List attached via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ *Samuel G. Williamson*
Samuel G. Williamson
Florida Bar No. 1033817
samuelwilliamson@quinnemanuel.com