**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| LUPIN ATLANTIS HOLDINGS SA, a foreign corporation, and LUPIN INC., a Delaware Corporation, | |
| Plaintiffs, | |
| v. | Case No.: 0:23-CV-61621-MD |
| XIAN-MING ZENG, TRANSPIRE BIO, INC., AXEL PERLWITZ, and WILLIAM SCHACHTNER, | |
| Defendants. | |

**<u>TRANSPIRE'S MOTION FOR SUMMARY JUDGMENT</u>**

**FILED UNDER SEAL**

## TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................ 4

I.  LUPIN'S TRADE SECRET "IDENTIFICATION" ............................................ 4

II.  LUPIN'S MISAPPROPRIATION CLAIMS RELY HEAVILY ON
DOCUMENTS THAT WERE NOT ACQUIRED OR ACCESSED BY
TRANSPIRE OR DR. ZENG .............................................................................. 7

ARGUMENT ........................................................................................................... 8

III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE LUPIN
HAS NOT SUFFICIENTLY IDENTIFIED THE ALLEGED TRADE SECRETS ............ 8

    A.  Lupin's Identification Of Documents "As A Whole" Does Not Satisfy Its
Burden To Identify Its Trade Secrets .......................................................... 9

    B.  Lupin's Pivot To Broad Trade Secret Categories Does Not Satisfy Its
Burden To Identify Its Trade Secrets .......................................................... 11

    C.  The Court Should Grant Summary Judgment Because Lupin Cannot
Establish The Existence Of Any Trade Secrets ........................................... 13

    D.  The Court Should Grant Partial Summary Judgement As To Information
Generated Or Recommended By The FDA. .............................................. 14

    E.  The Court Should Grant Partial Summary Judgment Of No
Misappropriation For Documents Last Accessed on April 5, 2021 ...................... 16

IV.  LUPIN CANNOT ESTABLISH DAMAGES FOR ITS TRADE SECRET
MISAPPROPRIATION CLAIMS ....................................................................... 17

Plaintiffs Lupin Atlantis Holdings SA and Lupin, Inc.'s (collectively, "Lupin") First and Second Cause of Action asserts claims against Defendant Transpire Bio Inc. ("Transpire") under the Defend Trade Secrets Act (DTSA) and Florida Uniform Trade Secrets Act (FUTSA). Summary judgment on these trade secrets claims is appropriate for several reasons.

*First*, Lupin bears the burden to identify each asserted trade secret and establish that it qualifies as such. Lupin must do so for each trade secret. Lupin has not met that burden. Lupin referred Transpire to 453 documents spanning 62,931 pages. Lupin does not specify the information within each document it alleges is a misappropriated trade secret or analyze how that specific information qualifies as a trade secret. Lupin's expert could not even say how many trade secrets are at issue in his expert report. Instead, Lupin provides conclusory assertions that each document "as a whole" is a trade secret. Courts routinely grant motions for summary judgment where, as here, plaintiffs attempt to bury their trade secrets amongst hundreds of documents and vague claims that the document "as a whole" is a trade secret. As these courts explain, a precise identification of the information alleged to be trade secret is critical to allow the Court and the factfinder to evaluate what (if any) information meets the statutory requirement of a trade secret, or what value it may have. The Court should grant summary judgment on this basis alone.

*Second*, the Court should also grant summary judgment because Lupin has no expert testimony, or only conclusory (and inadmissible) expert testimony, that its alleged trade secrets were not generally known or readily ascertainable, an element of both DTSA and FUTSA. Indeed, Plaintiffs' technical expert, Mr. Shafer, addresses only 252[1] of the 453 documents that Lupin is now claiming as trade secret. For documents not addressed by Mr. Shafer, Lupin has no expert testimony. For the remaining documents, Mr. Shafer's report repeats a boilerplate assertion that the document "as a whole" is not generally known or readily ascertainable. At deposition, Mr. Shafer testified he did nothing to determine whether information within the document met that criteria. Because a plaintiff can establish this element only with expert testimony, courts grant summary judgment where, as here, no such testimony is presented. The Court should do the same.

---

[1]  While Mr. Shafer alleges that there are 252 documents, some of those documents contain multiple files. *See* Ex. 6 (Shafer Op. Rep.) ¶¶ 141-996. In total, Mr. Shafer alleges that there are 257 files that are "trade secret." For this Motion, Defendants refer to the 252 unique documents identified by Mr. Shafer.

1

*Third*, among the 453 documents Lupin identifies are documents generated by the FDA and sent to Lupin and documents generated by Lupin containing recommendations from the FDA. Lupin cannot show that it owns trade secrets in FDA-generated information. This information is not developed by Lupin and is available to the public via Freedom of Information Requests. The Court should provide partial summary judgment that this information is not Lupin's trade secret.

Fourth, 192 of the 252 document identified by Mr. Shafer are located on a personal hard drive of Dr. Axel Perlwitz (his "My Passport Device"). It is undisputed that the forensic evidence for these documents shows that they were "Last Accessed" on April 5, 2021—eighteen months prior to Dr. Perlwitz's departing Lupin and long before Transpire existed. Thus, Lupin cannot show that Transpire acquired, disclosed or used any of these 192 documents, and it is black-letter law that mere possession of a "trade secret" cannot constitute misappropriation. The Court should thus provide partial summary judgment of no misappropriation as to these documents.

Finally, Lupin's trade secret claims also fail because it has no competent evidence through which a jury could reasonably calculate damages for Transpire's alleged misappropriation.

## PRELIMINARY STATEMENT

Dr. Xian-Ming Zeng is a pioneer in the field of inhalation drugs. Over the course of his career, he has served as World Health Organization Visiting Fellow and Mapplethorpe Postdoctoral Fellow at King's College, London, launched novel inhalation medicines at well-regarded pharmaceutical companies, and is an esteemed author—having published over 50 papers, three book chapters, and a textbook. He has decades of know-how developing inhalation drugs.

Lupin began recruiting Dr. Zeng in 2013. When Dr. Zeng joined the company, he proved invaluable. He used the knowledge developed over his career to lead Lupin's development of the first FDA-approved generic ("Gx") of ProAir HFA, the branded drug he launched at Teva. He also led the development of Lupin's Gx Spiriva Handihaler and was integral to Lupin's European launch of Luforbec, a Gx version of Fostair.[2] While at Lupin, Dr. Zeng worked on these and other drugs until his very last day at Lupin. Ex. 1 (Vanam Dep. Tr.) at 83:16-85:23.

A generic is "a copy of" a novel drug, "and thus identical in active ingredients, safety, and efficacy." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612 n.2 (2011) (citing *United States v. Generix Drug Corp.*, 460 U.S. 453, 454-455 (1983); 21 CFR § 314.3(b) (2006)). Under the Drug Price

---

[2] Lupin alleges that certain documents relating to these products correspond to trade secrets. Transpire, however, is not developing any of these products.

Competition and Patent Term Restoration Act of 1984—commonly known as the Hatch-Waxman Amendments to the Food, Drug, and Cosmetic Act—generics "can gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA." *Id.* at 612 (citing 21 U.S.C. § 355(j)(2)(A)). To develop a generic, Lupin—or any pharmaceutical company—must refer to public guidances published by the FDA to facilitate generic development.

Lupin enjoyed success with its inhalation generics, but it never invested in what Dr. Zeng joined the company to do: develop novel drugs. Beginning around 2020, Lupin also began to face serious headwinds caused by a lack of research and development spending, global quality control issues at its manufacturing sites, and rapidly declining employee morale.

Consequently, Dr. Zeng left Lupin in 2021, and later became the first employee and CEO of Transpire Bio, which was created in 2022. Since its creation, Transpire has continued to grow and eventually hired the other Defendants in this case (Axel Perlwitz and Bill Schachtner) months after its formation. Transpire, which is based in Florida, now has over 90 employees. Much of its work focuses on novel (not generic) inhalation drugs to treat indications like ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

While Lupin likes to bluster about "thousands" of documents that Dr. Zeng and two other Transpire employees retained after they left Lupin, many of those documents are not even alleged to contain trade secrets. Indeed, Lupin points to documents that are public (*e.g.*, public articles, FDA documents, presentations by Dr. Zeng and others to industry groups, etc.) and documents that are personal (*e.g.*, tax returns, pay stubs and family photographs). Lupin's "scientific" expert claims that of these "thousands" of documents, 252 contain trade secrets, but never specifies what precise information in those documents is actually a trade secret. As importantly, of those 252 documents, Lupin can only show that Transpire employees actually interacted with 32 of them

(and for 192 of them, Lupin's own forensic expert agrees that they were last accessed when all of the individual defendants were still Lupin employees and Transpire did not exist). Of those 32 documents, *one* pertains to a drug that Transpire is currently developing.

Everything Transpire has done to design and develop its drug products is documented; every regulatory submission, ever test, and every protocol. Discovery has rendered Transpire's business an open book—Lupin knows exactly what products Transpire is developing, what communications Transpire has had with the FDA, how it products are being developed, and by whom. Yet, Lupin cannot point to any aspect of Transpire's drug development that traces back to information in a Lupin document. *See also* Ex. 2 (Shafer Dep. Tr.) at 235:17-236:5, 308:12-19; 301:11-302:5; 193:18-194:11. After a lengthy and expensive discovery process, Lupin cannot identify any actual "trade secrets" in the information Transpire employees retained and cannot point to any actual use that Transpire has made of trade secret information.

## BACKGROUND

## I.  LUPIN'S TRADE SECRET "IDENTIFICATION"

From the outset of this litigation, the issue of Lupin's identification of the trade secrets it claims were misappropriated has been a topic of dispute. In its First Amended Complaint, Lupin defined its trade secrets using broad categorical descriptions. Dkt. No. 31 ¶ 31. Lupin also referenced several documents containing trade secrets at issue. *Id*. ¶ 97.

 Transpire expected that Lupin would provide further specificity as to the alleged trade secrets after Transpire produced discovery, but Lupin has persistently refused to do so. In response to Transpire's Interrogatory No. 2—which required Lupin to "identify with particularity every individual Lupin trade secret You allege was misappropriated"— Lupin cited to 420 unique documents spanning 65,201 pages, without identifying any specific information in any document that it was claiming as a trade secret. Instead, Lupin claimed that each document in its entirety corresponds to a trade secret. An excerpt of Lupin's response is below, with the response continuing for multiple pages in a similar manner.

> Drug Development Trade Secrets: Transpire_0023873;  Transpire_0023964;
> Transpire_0027678;    Transpire_0065386;    Transpire_0065568;    Transpire_0022347;

Ex. 3 (Lupins' Second Response to Transpire's Interrogatory No. 2) at 20.

Lupin also refused to designate a witness to identify which specific information within each document Lupin alleges to be its trade secrets. Indeed, Transpire served a 30(b)(6) Notice

seeking "[t]he specific information within each Document referenced in [Lupins'] response to Transpire's Interrogatory No. 2 that [Lupins] contend is a Trade Secret." Ex. 7 (Transpire's 30(b)(6) Notice (Topic 4)).  Lupin objected to these topics on the basis that "to identify what sentence or what information in each and every document is a trade secret" would be a "big undertaking" that would be an "immense burden" that would not be "practical."  *See* Ex. 4 (1-13-2025 Hr'g Tr.) at 13:5-16, 13:24-14:3.  As a result, Magistrate Judge Reid ordered Lupin to identify and designate a witness as to 20 exemplary documents that Lupin would "in good faith" identify as representative of its trade secrets.  Dkt. No. 168.  At deposition, Lupin's corporate representatives were unable to identify what specific information in each of the 20 exemplary documents was a trade secret and stated that it would not be "humanly possible" to do so.  Ex. 5 (Srivastava Dep. Tr.) at 155:10-159:1; Ex. 1 at 241:21-242:1 ("Q. Have you done anything to determine whether the information in this document is, in fact, a secret? A.  No.").

Lupin's technical expert, Mr. Patterson Shafer, doubled down on Lupins' document "as a whole" approach.  Mr. Shafer discussed 252 documents[3]—totaling more than 40,000 pages—certain of which were not cited in Lupin's Response to Transpire's Rog. No. 2.  SMF ¶¶ 77, 79.  In total, Lupin has identified 453 unique documents across its interrogatory response and Mr. Shafer's report.  Those documents are identified in **Appendix A** attached to the end of this motion.

For virtually every document in his report, Mr. Shafer's analysis followed the same boilerplate approach.  He stated that the "document, as a whole, is a trade secret" and provided a series of conclusory assertions that the "document derives independent economic value from not being generally known to or readily accessible" and that "this type of document is not something that company like Lupin would circulate externally." A representative example is below:

**258. The document derives independent economic value from not being generally known to or readily accessible by another person using proper means who can obtain economic value from the disclosure or use of the information**. For example, this document is a clinical study report to assess the efficacy and safety of Once Daily Administration of Lupin Tiotropium Bromide Inhalation Powder compared to Spiriva® HandiHaler®. The document contains product design parameters and information regarding the characteristics and performance of Lupin's product. **This type of document is not something that a company like Lupin would circulate externally without confidentiality protections in place** because it contains confidential information

---

[3]  While Mr. Shafer alleges that there are 252 documents, some of those documents contain multiple files.  In total Mr. Shafer alleges that there are 257 files that are "trade secret." For this Motion, Defendants refer to the 252 unique documents identified by Mr. Shafer.

regarding, among other things, Lupin's drug product characteristics and analysis methods. **The document, as a whole, is a trade secret because it contains information such as drug characteristics and drug study results**. Lupin invested significant resources into the design and development of this study. **This information would be highly valuable to a competitor in the generic drug industry**, and in particular to a recent entrant into the industry attempting to quickly spin up drug product development and gain regulatory approval.

Ex. 6 (Shafer Op. Rep.) at ¶ 258 (emphasis added). Because Mr. Shafer is not qualified to speak about the content of the documents at issue (*see* Transpire's concurrently filed *Daubert* motion), he did not discuss what specific information within each document is not known to the public or how it derives economic value from that fact. For instance, although Mr. Shafer vaguely references "design parameters" of a clinical study report in the paragraph above, he does not identify those parameters, discuss how they differ (if at all) from parameters that are generally known or readily ascertainable (*e.g.*, those included within clinical study protocols that Lupin and others have already published), or how any differences have independent economic value.

Similarly, during his deposition, Mr. Shafer was unable to identify the alleged trade secrets within each document or even how many trade secrets are at issue in his report.

> Q. **So how many trade secrets do you describe in your report?** Is it the number of documents you describe or something different?
> A. **I can't answer it**.
> …
> Q. Okay. So I understand that you can count the number of documents. **If we were to pull up one of these documents, are you able to also count the number of trade secrets within the document that you're identifying?**
> A. It would depend. Not with – so certain things that are in there may be trade secret. **No, the answer is that I would have to compare that to publicly available information in order to get an accurate number within the documents.**
> Q. Okay. **And you haven't done that?**
> A. No, **I have not done that.**

Ex. 2 at 141:3-143:17 (emphasis added). Unable to state whether specific information within a document qualifies as a trade secret, Mr. Shafer reverted to claiming that each document itself is a trade secret (regardless of its contents): "My opinion would be that the document itself, in total, remains a trade secret until that document is published. There's no denying that these documents do contain information that is -- some of them may contain information that is publicly available; but I did not dissect the documents in that way." *Id.* at 48:7-49:4.

Believing that the universe of trade secrets at issue in this case had now been narrowed at least to Mr. Shafer's 252, Defendants met and conferred with the Lupin, only to learn that, in fact, Lupin was taking the position that it could still also cite any of the other nearly 200 documents it referenced in Interrogatory 2. Faced with Mr. Shafer's indeterminate and boilerplate references to 252 documents that (he claimed) "as a whole" constitute trade secrets and Lupin's claim that the other documents they identified in response to Interrogatory 2 remained available to be cited as trade secrets (in spite of the fact that no expert had offered testimony that the documents qualify as trade secret), Defendants moved this Court to set a date by which Lupin would narrow its trade secrets to a defined set that would be litigated at trial, an approach consistent with other courts across the country who have tried DTSA matters, including trials that have involved the firm representing Lupin. Dkt. No. 175. In response to this motion for a narrowed set of trade secrets, Lupin for the first time claimed that it was identifying nine categories of documents as trade secret, one of which was not discussed by Mr. Shafer or any other expert: (1) Analytical Method Development and Validation, (2) Characterization Studies, (3) Statistical Analysis Plans (SAP) and Documentation, (4) Pre-Clinical and Clinical Study Protocols, (5) Pre-clinical and Clinical Study Reports and Other Documentation, (6) Pre-ANDA FDA Correspondence, (7) ANDA Submissions Content, (8) FDA Comments and Lupin Responses, and (9) Business Strategies (which was not analyzed by Shafer). SMF ¶ 80.

Now, with trial merely three months away, Lupin has not provided any opinions identifying the specific alleged trade secret information within each document that Defendants have misappropriated. This is in contravention of clear precedent from federal courts in this district, circuit and nation and means that Lupin has not presented allegations of misappropriated trade secrets that a jury can resolve. Summary judgment is appropriate for this reason alone.

## II.   LUPIN'S MISAPPROPRIATION CLAIMS RELY HEAVILY ON DOCUMENTS THAT WERE NOT ACQUIRED OR ACCESSED BY TRANSPIRE OR DR. ZENG

Defendants have also produced extensive discovery in this case, including thousands of documents regarding Transpire's product development and 97 forensic artifact listings (across nine different devices) that provide detailed computer usage information. Ex. 8 (Kunkel Report) Tables 3-6. Through that discovery, Lupin has been unable to show, in large part, anything more than passive possession on the part of Defendants. In total, of the documents Mr. Shafer has identified as allegedly trade secret, Lupin can only show that 32 documents were ever opened by a Transpire employee, Ex. 8 ¶ 55, and cannot show that Transpire's drug development used any trade secret

information.  *See also* Ex. 2 at 308:12-19.

More than 75% of the documents Lupin's expert identifies as "trade secret" were last accessed on April 5, 2021, long before Transpire even existed and while all the individual defendants were still Lupin employees.  Specifically, of the 252 documents Mr. Shafer identifies as "trade secret," 192 were found on a personal external hard drive  ("My Passport Device") belonging to Dr. Perlwitz.[4]  SMF ¶ 94.  Dr. Perlwitz, who was employed at Lupin from October 2016 to October 5, 2022, took a vacation to South Africa on April 13, 2021.  SMF ¶¶ 83-84.  At the time, Lupin had 11 different regulatory applications pending in the United States, Europe and the United Kingdom.  SMF ¶ 85. As a result, on April 5, 2021, Dr. Perlwitz downloaded his work files to ensure he had access to them while on vacation.  SMF ¶ 86.  Specifically, he downloaded one of his work folders, entitled "CDPool," to the My Passport Device which included the 192 files.  SMF ¶ 89.  Dr. Perlwitz had an exception to use external hard drives while working at Lupin.  SMF ¶ 92. The 192 documents were never downloaded to Dr. Perlwitz's Transpire or personal computers.  SMF ¶ 96.  Moreover, Lupin's own forensic expert agreed that each of the 192 documents has the same last accessed and file created date of April 5, 2021, meaning that  these documents were last accessed in April of 2021 – eighteen months before Dr. Perlwitz departed Lupin and nearly a year before Transpire was created.  *See* SMF ¶ 95.  Dr. Perlwitz turned over his My Passport Device to a third-party forensic firm after this lawsuit was filed.

## ARGUMENT

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE LUPIN HAS NOT SUFFICIENTLY IDENTIFIED THE ALLEGED TRADE SECRETS

"A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."  *Portionpac Chemical Corp. v. Sanitech Systems, Inc.*, 217 F. Supp. 2d 1238, 1252 (M.D. Fl. Jul. 25, 2002) (granting summary judgment of no trade secret misappropriation where plaintiff failed to sufficiently identify its trade secrets) (citing *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998)).

"When a party fails to identify its trade secrets with particularity, summary judgment is appropriate."  *Imax Corp.*, 152. F.3d at 1166; *see also Levenger Co. v. Feldman*, 516 F. Supp. 2d

---

[4]   Dr. Perlwitz has used his My Passport Device since 2007, before he was employed at Lupin.  SMF ¶ 91.  Perlwitz's My Passport Device contained immense amounts of personal files and folders, including personal photos, audiobooks, and mp3 tracks.  *Id.*

1272, 1287 (S.D. Fla. 2007) (holding that a plaintiff "must describe the allegedly misappropriated trade secrets with reasonable particularity" and that plaintiff's misappropriation claim "fail[ed]" because the "alleged trade secrets are all extremely vague and attempts to clarify have been in vain") (Middlebrooks, J.).   This is true even in instances where courts found plaintiff's identification adequate at the pleading or discovery stage.  *See, e.g., Freeman Inv. Management Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *9-12 (S.D. Cal. Sep. 30, 2016) (granting summary judgement for failure to sufficiently identify trade secrets where defendant had "repeatedly [unsuccessfully] challenged the sufficiency of Plaintiff's identification of its allegedly misappropriated trade secrets throughout this litigation.").

Here, the Court should grant summary judgment because Lupin has failed to identify what exactly its alleged trade secrets are, or how many trade secrets are at issue.[5]  This approach is contrary to well-established law that a document itself is not a trade secret.

## A.   Lupin's Identification Of Documents "As A Whole" Does Not Satisfy Its Burden To Identify Its Trade Secrets

Lupin's current trade secret "identification" refers Defendants to 453 documents spanning 65,201 pages.  These documents are identified in Appendix A attached to the end of the Motion. Lupin's technical expert does not even discuss nearly 200 of these documents.  For these documents, Lupin's identification amounts to a mere listing of Bates Numbers in response to Transpire's Interrogatory No. 2.  *See* Background, Section A.  The documents that are discussed in the expert report of Lupin's technical expert (Documents #1-257[6]) are on no better footing because Mr. Shafer's identification is also premised on the document "as a whole" being a trade secret, which is clearly contrary to established law that a document itself cannot be a trade secret. *See* Background, Section A.  Because Lupin has never addressed how any specific drawing, process, procedure, or other piece of information in any of these documents qualifies as a trade secret,  Lupin's and Mr. Shafer's document "as a whole" theory fails as a matter of law and should be subject to summary judgment.

A "document itself cannot be a trade secret, although it may contain trade secrets." *Tao of Sys. Integration, Inc. v. Analytical Serv's. & Materials, Inc.*, 330 F. Supp. 2d 668, 678 (E.D. Va.

---

[5] Defendants cannot fathom how Lupin contends that it has 1000s of trade secrets when its very business is to copy the products of the branded pharmaceutical products.

[6]  References to "Document #s" are to Appendix A at the end of this motion.

2004) aff'd, 141 F. App'x 129 (4th Cir. 2005). Courts routinely granted summary judgment where, as here, a plaintiff fails to address how specific information in a document qualifies as trade secret:

- *Bunnell v. Motion Pictures Ass'n of America*, 567 F.Supp.2d 1148 (C.D. Cal. Aug. 22, 2007). The plaintiff identified "34 documents" and "claim[ed] that said documentation 'as a whole' derives value" as a trade secret. *Id*. At 1155. The court held that plaintiff's **identification of the document "as a whole" does not "identif[y] with any measure of particularity what trade secrets the documents given to MPAA contain."** *Id*. At 1155.

- *X6 Limited v. Li-Tek Corp. Company*, 2012 WL 12952726 (C.D. Cal. Aug. 27, 2012). Plaintiffs identified several "categories" of alleged trade secrets (*e.g.*, "trade secrets related to the battery design criteria for Plaintiffs' active 3D shutter glasses") and then **cited to "hundreds of documents that purportedly 'reference or reflect the trade secret information** disclosed to Li-Tek.'" *Id*. At *6. "However, Plaintiffs fail[ed] to specifically identify what in these documents is a trade secret and where within these documents that information is located." *Id*. Thus, the Court granted summary judgment because plaintiff's **identification of documents was "insufficient to satisfy Plaintiffs' 'burden of identifying for the court exactly what … it claim[s] as trade secrets.'"** *Id*. (citing *Imax Corp.*, 152 F.3d at 1166).

- *Calendar Research LLC v. StubHub, Inc.*, Case No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13, 2020). Granting summary judgment and noting that "**[w]hen the plaintiff effectively buries its trade secrets in documentation, we are not required to shift through those documents and speculate as to what information contained therein is claimed as a trade secret.**" *Id*. at *9.

- *IDX Systems Corp. v. Epic Systems Corp.*, 165 F. Supp. 2d 812 (W.D. Wisc. 2001), *aff'd in relevant part*, 285 F.3d 581 (7th Cir. 2005). The plaintiff provided a forty-two page narrative and then referred the court and defendants "twenty-one user manuals." *Id*. at 818. The Court granted summary judgment, explaining that **"Plaintiff has effectively buried its trade secrets in documentation. After reading plaint'ff's Supplemental Answer together with Appendix A the Court faces an unknown number of concepts, designs, methods and processes somewhere documented within twenty-one technical product manuals**. This combination can yield no concrete, particularized trade secrets." *Id*. at 819

- *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290 (D. Utah 1999), 'ff'd, 251 F.3d 171 (Fed. Cir. 2000). Granting summary judgment of failure to identify trade secrets and explaining that "**[s]imply identifying documents and claiming that they contain trade secret information is not enough**. Plaintiff must establish that the information in the identified documents is not published or readily ascertainable information to those in the field." *Id*. at 1313.

Here, Lupin's identification of its trade secrets is even more deficient than the cases cited above because Lupin buries its trade secrets in an unusually large set of 453 documents and 65,201 pages. As Lupin's expert has admitted, there is "no denying that these documents do contain information that is … publicly available." Ex. 2 at 48:24-49:4. For instance, Lupin attempts to identify various clinical study protocols as its trade secrets, but clinical study protocols have been in existence for decades and are routinely published online by Lupin and others. Ex. 2 at 223:15-224:2. "In order for a factfinder to determine whether information [within a document] meets the

statutory definition of a trade secret, the plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'" *Zunum Aero, Inc. v. Boeing Company*, 2024 WL 3822780 (W.D. Wash. 2024) (granting JMOL for failure to identify trade secrets). Like the cursory analysis in Mr. Shafer's report, the *Zunum* witnesses would introduce a document, discuss a few pages or excerpts, and testify that the trade secrets "would be in various places in our documents," which is an approach that the court roundly condemned. *Id.* at *5. By claiming that a clinical study protocol "as a whole" is a trade secret, Lupin renders the factfinder unable to determine what (if any) information in the study is separate from studies – including Lupin's own clinical studies – that are publicly known or readily ascertainable, whether that information has independent economic value, and whether that information was misappropriated.

**B.      Lupin's Pivot To Broad Trade Secret Categories Does Not Satisfy Its Burden To Identify Its Trade Secrets**

Although Lupin and its technical expert have repeatedly claimed that "the document, as a whole, is a trade secret", Ex. 6 at ¶ 258, in response to Defendants' motion to narrow the number of trade secrets, Lupin recently departed from that identification and claimed that it was identifying only "nine trade secrets." Dkt. No. 187 ("Lupin only has nine trade secrets that it intends to present to the jury… Those nine trade secrets are exemplified by about 450 documents."). In reality, Lupin's nine trade secrets merely refer to nine broad categories which pursuant to numerous judicial decisions, including in this district, are plainly insufficient; a satisfactory identification must include specific information (*e.g.*, the particular design, procedure or data) that plaintiffs contend is a trade secret. *See* Background, Section A.[7] In *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322 (S.D. Fla. 2001), a case that has been repeatedly cited for this proposition by other federal courts in Florida and nationally, the court explained that a trade secret plaintiff must describe the trade secrets it seeks to protect with "reasonable particularity" and set forth a definition of reasonable particularity that precludes identification using broad categories. *Id.* at 1325-26. Judge Gold held that plaintiff's categorical identification, such as trade secrets in "pesticide and fungicide techniques," was insufficient because it did not identify the specific "aspect of Del Monte's pesticide and fungicide techniques."

_____

[7]  Lupin's technical expert does not identify the categories each document falls into.

In *Knights Armament Co. v. Optical Systems Technology, Inc.*, 254 F.R.D. 463 (M.D. Fla. 2008), the plaintiff claimed that it had trade secrets in categories such as "manufacturing processes and procedures, marketing information, pricing data, product designs and manufacturing information, supplier and vendor lists, technical information, and technical drawings." *Id*. at 465. The court held that these broad categories did not satisfy the reasonable particularity standard because "it is insufficient to describe the trade secrets by generic category, such as the components of the night vision devices to which the alleged trade secrets relate." *Id*. at 467. "[Plaintiff] must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data." *Id*. at 467. *See also United States Thrillrides, LLC and Polercoaster, LLC v. Intamin Amusement Rides Int. Corp. Est.*, 2023 WL 11693750, *3 (M.D. Fla. Dec. 12, 2023) (holding that plaintiff's identification of its trade secrets as "engineering plans for the New Jersey and Orlando Polercoaster projects created by Intamin" was in fact "far too broad and too vague to identify trade secrets with any reasonable particularity" because "'engineering plans' can encompass a multitude of designs, procedures, or data—it is too broad to put Defendant on notice of what particular trade secret is allegedly misappropriated." *Id.*).

Courts outside of Florida have taken the same approach. Like Lupin, the plaintiff in *X6* identified several "categories" of alleged trade secrets (*e.g.*, "trade secrets related to the battery design criteria for Plaintiffs' active 3D shutter glasses") and then cited to "hundreds of documents that purportedly 'reference or reflect the trade secret information disclosed to Li-Tek.'" *X6 Limited v. Li-Tek Corp. Company*, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012). There, the Court granted summary judgment because "Plaintiffs fail[ed] to specifically identify what in these documents is a trade secret and where within these documents that information is located." *Id*.

The categories Lupin identifies correspond to a vague and generic type of information that exists in the field. For example, Lupin's identification of "Business Strategies" does nothing to identify the specific business strategies that Lupin is alleging as its trade secret. The same is true with Lupin's other categories. These broad descriptions do not identify the particular information within each document that Lupin contend is a trade secret, let alone in a manner that distinguishes that information from matters that are known or readily ascertainable (known or ascertainable business strategies, analytical methods, clinical studies or plans, ANDA submissions, etc.). By Lupin's own admission, this case involves "complex" technology, Ex. 6 ¶17, such that "it is unlikely that the district court or any trier of fact would have expertise in discerning exactly which

of" the information in a document meets the statutory requirements for a trade secret. *Imax*, 152 F.3d at 1167; *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F.Supp.3d 222 (S.D.N.Y. Aug. 23, 2021) (Plaintiffs' identification of the trade secret as "utilization of a relatively low percentage (less than approximately 10%) of aramid fibers in a fabric for luggage. A minimum specification to be sufficiently abrasion, tear and puncture resistant is 98.3% polyester and 1.7% aramid fiber" was insufficient to meet plaintiff's burden) ("A precise identification is critical in order for "the Court [to] ensure that only true trade secrets obtain protection."). The factfinder, the Court, and Defendants are thus without the precise identification that is needed to determine whether Lupin has met its burden to identify information that qualifies as a trade secret, whether that specific information was misappropriated, and the value (if any) of that information. And Lupin's document "as a whole" approach renders Defendants unable to address each alleged trade secret and show that it has no value to Transpire and/or does not qualify as a trade secret. *Jobscience, Inc. v. CV Partners, Inc.*, 2014 WL 1724763, *3 (N.D. Cal. May 1, 2014) (vague identification "makes it virtually impossible" for Defendant to "prepare its defenses").

**C.     The Court Should Grant Summary Judgment Because Lupin Cannot Establish The Existence Of Any Trade Secrets**

Separate and apart from identifying its alleged trade secrets, Lupin also bears the burden of showing that each of the alleged trade secrets was not (i) "generally known" or (ii) "readily ascertainable by proper means." *See* Fla. Stat. § 688.002(4); 18 U.S.C. § 1839(3). Lupin has the burden of establishing each of these requirements "**as to each claimed trade secret**." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1158 (11th Cir. 2004) (emphasis added); *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *34–35 (C.D. Cal. Nov. 7, 2022) (analyzing elements as to each "Asserted Trade Secret[]"). Courts have been clear that in cases involving complex technology, these two elements can only be satisfied with expert testimony. *See DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *11 (D. Or. Sept. 12, 2019) (holding that, "[w]ithout expert testimony separating source code that derives value from being secret from open-source and third-party source code, which does not, Lupin cannot establish the existence of a trade secret.") In this matter, Lupin has offered no admissible expert testimony establishing that the alleged trade secrets were not "generally known" or "readily ascertainable."

Lupin obviously cannot meet its burden as to documents not discussed by Lupin's technical expert. *See* App'x. A, Documents #258-453. Even for the documents described in Mr. Shafer's expert report (App'x A, Documents #1-257), Lupin offers no admissible expert testimony

establishing that the alleged trade secrets actually qualify as trade secrets. <u>First</u>, Lupin's technical expert admitted that he did not analyze whether information in the documents he cites is generally known. Ex. 2 at 48:14-49:4. <u>Second</u>, Mr. Shafer's expert report does not mention the phrase "readily ascertainable" outside the section entitled "Understanding of the Law" in which he refers to the statute. Ex. 6 ¶¶ 41, 43. Mr. Shafer does repeat the following boilerplate statement for 176 of the 252 documents he discusses in his report: "The document derives independent economic value from not being generally known to or <u>readily accessible</u> by another person using proper means who can obtain economic value from the disclosure or use of the information." Ex. 6 (Shafer Rep.) Section V (*e.g.*,¶¶ 154, 161, 171, 174, 177, 180, 183, 185, 191, 195, 199, 203, 208, 213). Of course, the actual term from the statute is "readily ascertainable," which Mr. Shafer did not address.[8] Ex. 2 at 45:21-46:13. In addition, as explained in Transpire's concurrent *Daubert* motion, Mr. Shafer's conclusory statements fail to meet the threshold standards articulated in *Daubert* and its progeny. <u>Third,</u> for the remaining documents discussed in his report, Mr. Shafer never once mentions the phrase "readily ascertainable" (or even "readily accessible"). Ex. 6 ¶¶ 497-499. The record is therefore devoid of evidence that information in these documents qualifies as a trade secret.

Courts routinely grant summary judgment where a plaintiff fails to offer expert testimony establishing the existence of "trade secrets." *Seshadri Raju, M.D., P.A. v. Medtronic, Inc.*, 2021 WL 1232102, at *9 (S.D. Miss. Mar. 31, 2021) ("[A]s a matter of law, [plaintiff's] failure to present an expert precludes him from establishing whether this information is readily ascertainable[.]"); *Trident Products and Services, LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F.Supp.2d 771, 779 (E.D. Va. April 12, 2012) (granting summary judgment to defendant given "plaintiff's failure to identify an expert witness" to opine on "readily ascertainable" element); *Hill v. Best Med. Int'l, Inc.*, 2011 WL 5082208, at *14 (W.D. Pa. Oct. 25, 2011) (same).

### D. The Court Should Grant Partial Summary Judgement As To Information Generated Or Recommended By The FDA.

Lupin claims certain regulatory correspondences with the FDA are trade secrets. These correspondences fall into two categories: (1) documents generated by the FDA and sent to Lupin

---

[8] Defendants believe that this "ascertainable" vs. "accessible" distinction in Shafer's report was purposeful, as it ties to Lupin's document-as-a-whole theory discussed above.

;and (2) documents generated by Lupin containing recommendations from the FDA.[9]  Although Lupin does not identify specific information within these documents that they allege qualifies as trade secrets (Section A), the Court should at least grant summary judgment that any FDA-generated information is not a trade secret.

Under both the DTSA and FUTSA, information that is "readily ascertainable" is excluded from trade-secret protection. 18 U.S.C. § 1839(3); Fla. Stat. § 688(4)(a).   The exclusion applies to information available through a Freedom of Information Action ("FOIA") request, which allows the public to access regulatory correspondences between the FDA and private entities.  *See Ranger Env't Servs. LLC v. Foehl*, 2023 WL 6931336, at *21 (S.D. Ala. Oct. 19, 2023) (alleged trade secrets were "publicly available via a FOIA request, and so cannot constitute a trade secret"); *Fisher v. SmithKline Beecham Corp., No. 07-CV-0347A(F)*, 2008 WL 4501860, at *10 (W.D.N.Y. Sept. 29, 2008) (information was not a trade secret because "Plaintiffs would be able to obtain [the information] through a Freedom of Information Act request.").

Lupin does not dispute that "FDA submissions may be made public to comply with a Freedom of Information Act request."  Ex. 2 at 58:8-13.  Nor does it dispute that the FDA may exempt information within a document from disclosure only (1) if it is designated as exempt upon submission or within a reasonable time thereafter or (2) if the FDA has substantial reason to believe that information in the records could reasonably be considered exempt. 21 C.F.R. § 20.61; *see also* 5 U.S.C. § 552(b)(4); Ex. 2 at 60:5-10, 64:6-10.  Here, the record is devoid of any evidence that Lupin designated the FDA correspondences as exempt.  Ex. 2 at 64:24-65:10.  Even if Lupin had done so, the exemption would not apply to FDA-generated information.  *See Vanda Pharms., Inc. v. United States*, 174 Fed. Cl. 513, 527 (2025) (FDA recommendations were not trade secrets because they were "not developed by [plaintiff] or submitted to the FDA. Rather, they were generated by the FDA and proposed to and accepted by [plaintiff] during the NDA process in order to secure approval to market"); *AMA Sys., LLC v. U.S. Food & Drug Admin.*, No. CV DLB-23-489, 2024 WL 712465, at *10 (D. Md. Feb. 21, 2024) (document containing "FDA's communications [] about the EUA request" does not qualify for trade secret status because it was "generated within the government, rather than obtained from a person outside the government[.]").  Lupin bears the burden to demonstrate that the information it claims as a trade secret is not readily

---

[9]   Document # 2, 15-17, 19, 23-24, 28-31, 99-100, 107-108, 137, 139-141, 143-145, 163-164, 166, 168, 172-173, 191-192, 194-195, 236, 258-260, 271-272, 295-298, 321-322, 385-388.

ascertainable. *Trident,* 859 F.Supp.2d at 779. Because Lupin has not identified any information within its FDA correspondences that is exempt from disclosure, there is no genuine dispute that the information is readily ascertainable.[10]

### E.    The Court Should Grant Partial Summary Judgment Of No Misappropriation For Documents Last Accessed on April 5, 2021

Lupin asserts that Dr. Perlwitz's personal My Passport Device includes documents (Documents #1-192) that Lupin claims correspond to "trade secrets."[11] *See* Background, Section B.  To establish that Transpire misappropriated these "trade secrets," Lupin must show one of two categories of conduct: (1) that Transpire acquired each trade secret by improper means, or (2) that Transpire disclosed or used each trade secret without consent.  Lupin cannot establish.[12]

There is no genuine dispute that Dr. Perlwitz acquired Documents #1-192 by proper means – it is clear he did so.  SMF ¶¶ 84-92.  Each of these document was downloaded while Dr. Perlwitz was employed by Lupin and never again accessed.  In particular, Dr. Perlwitz downloaded these documents on April 5, 2021 to ensure he had access to them when he left for vacation to South Africa a few days later.  SMF ¶¶ 84-87.  Because Dr. Perlwitz downloaded these document in a permissible manner for work, his acquisition of Documents #1-192 was by proper means.

There is also no genuine dispute that Transpire and Dr. Zeng did not acquire, disclose or use Documents #1-192.  Indeed, the record evidence affirmatively establishes that none of these documents were accessed after April 5, 2021.  SMF ¶ 95.  It is undisputed that the metadata for each of these documents has a "File Created" and "Last Accessed" date of April 5, 2021.  *Id.*  As Transpire's forensic expert explains, having the same File Created and Last Accessed date indicates that the files were created on the My Passport drive on April 5, 2021, and not accessed after that.  Ex. 8 ¶ 57.  In fact, Lupin's forensic expert was forced to agree that "there is no evidence" that Documents #1-192 were accessed after April 5, 2021.  Ex. 10 (Faulkner Rough Tr.) at 95:5-96:7.  At this time Transpire did not exist and Dr. Zeng was still employed at Lupin.  Lupin

---

[10]   The Court should also grant summary judgment as to this information because Lupin cannot establish that the FDA took reasonable measures to maintain the secrecy of the recommendations.  It is undisputed that Lupin has no control over what information the FDA makes public or shares with other companies.  Ex. 9 (Gupta Dep. Tr.) at 257:10-17.

[11]   Dr. Perlwitz does not possess the My Passport drive as he turned it over to a third-party forensic firm for imaging and storage after the filing of this lawsuit.

[12]   There is no claim of trade secret misappropriation against Dr. Perlwitz.

cannot show that either of the two relevant defendants acquired Documents #1-192.

Dr. Perlwitz's continued possession of his My Passport drive after departing Lupin also fails to demonstrate misappropriation as a matter of law. *Del Monte*, 148 F. Supp. 2d at 1338 ("[m]isappropriation of trade secrets is an intentional tort" and "[a]s such, [Lupin] must show more than mere possession of a trade secret"); *Apple Inc. v. Rivos, Inc.*, 2023 WL 5183034 (N.D. Cal. 2023) ("mere possession of trade secrets does not amount to misappropriation."). In *Ranger*, a former employee "possessed and used a personal external hard drive to store company documents he created." *Ranger*, 2023 WL 6931336, *12. "Foehl admits that he took his external hard drive with him when he left Ranger's employ and that the hard drive contained company documents." *Id.*, *13. The court, however, noted that "[a]n 'allegation that a defendant merely continues to possess a trade secret is not an allegation the defendant acquired, disclosed, or used a trade secret— the DTSA's definitions of misappropriation.'" *Id.*, *21.

## IV.   LUPIN CANNOT ESTABLISH DAMAGES FOR ITS TRADE SECRET MISAPPROPRIATION CLAIMS[13]

Lupin has no competent evidence through which a jury could reasonably calculate damages for Transpire's alleged misappropriation. *See Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 724 (5th Cir. 2006) (granting summary judgment based on plaintiff's inability to establish damages through "inherently speculative" projections of defendant's future profits); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1335 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008); *see also Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1208 (5th Cir. 1986) (trade secret value should not "be based on sheer speculation."). ████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████ █████████████████████████
████████████████████████████████████████████████
████████████████████ ████████████████████████

---

[13] The DTSA and FUTSA provide for damages for actual losses and unjust enrichment damages. *See* 18 U.S.C. § 1836(b)(3)(B)(i); Fla. Stat. § 688.004(1).

[14] The reasonable royalty analysis seeks to approximate the amount at which the parties would have agreed to enter into a license agreement for use of the trade secrets at the time they were misappropriated. *See Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1051–52 (Fla. 2d DCA 2001).

In particular, Lupin has no evidence to attribute value to any of its alleged trade secrets. In the ordinary course of business, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ These product-specific costs cannot be parsed at the document-by-document level Lupin uses to define its alleged trade secrets, and certainly cannot be allocated at the level of specific trade secret information *within* the documents. *Id.* at 81:14-24.[15] Consequently, Hall resorts to cost data from a Transpire budget for the competing products to calculate Transpire's purported "avoided costs." Ex. 11 ¶¶ 21, 109-111. She provides no method for apportioning damages to individual documents, and thus no evidence of "avoided costs" associated with any particular trade secret, which is insufficient. *Id.; see, e.g., LivePerson, Inc. v. [24]7.AI, Inc.,* 2018 WL 6257460, at *2 (N.D. Cal. Nov. 30, 2018) (excluding expert opinion for failure to apportion damages among particular trade secrets as it "offers no methodology for the jury to calculate trade secret misappropriation damages on fewer than all of the 28 alleged trade secrets"); *MSC Software Corp. v. Altair Eng'g, Inc.*, 2015 WL 13273227, at *2 (E.D. Mich. Nov. 9, 2015), 2015 WL 13359781 (E.D. Mich. Nov. 22, 2015) (excluding expert testimony based on failure to apportion damages to the incremental value added by specific trade secrets); *see also Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*, 2024 WL 4894639, at *23 (D. Mass. Nov. 26, 2024) (expert's damages model was fundamentally flawed for "assum[ing] that all of the 5,445 files contain trade secrets, [ ] when some contain publicly available information" and disagreeing that she "could explain how to apportion the cost data she used" at trial, as this was not provided for in her report). The documents at issue necessarily comprise only a small and indeterminate fraction of Lupin's overall development activities and costs for the relevant products; yet, Hall's calculations improperly assume that Transpire avoided *all* "operating," "general," and "labor" costs for three projects, including one for a product Transpire is no longer developing, during the supposed head start period.  Ex. 11 ¶¶ 181-184.

Indeed, Lupin recently represented that it will not proceed to trial on all ~450  documents

---

[15] *Cf. Tao*, 330 F. Supp. 2d at 678 ("a document itself cannot be a trade secret"); *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 2024 WL 4792084, at *1 (D.S.C. July 17, 2024) (finding no authority that would allow a Lupin to stack individual compilations created several years apart for different business purposes to "form one leviathan trade secret.").

presently identified as trade secrets.  Ex. 13 (1/13/25 Hearing Tr.) 25:18-26:3.  As to whatever yet-unknown narrowed universe of "trade secret" information Lupin ultimately attempts to try, even if the jury finds some misappropriation, the scope of liability will be limited to some subset of the universe upon which Hall based her damages opinions.[16]   The jury will be required to make findings of fact as to individual trade secrets in a special verdict form *and assign damages accordingly*.  *See* Eleventh Circuit Pattern Jury Instruction, 11.1 (calling for insertion of "name of trade secret[s]" as to each element; Fla. Std. Jury Instr. (Civ.) 416.41 (calling for "description of information" constituting trade secret).  Lupin has no evidence and no expert opinion that would allow the jury to accomplish this task; Hall's opinions are the same whether the jury finds misappropriation of one trade secret, ten, or a hundred.  This failure to apportion cannot survive summary judgment.[17]  *Cf. Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 670–71 (E.D. Tex. 2002) (plaintiff's "attempts to attribute every penny of [defendant's] purchase price and every penny of the [relevant] technology to the value of its alleged trade secrets "reek[ed] of incongruity and underscore[d] the speculative nature of [plaintiff's] alleged damages.").

Further, baked into both of Hall's damages models are a series of speculative assumptions about future events, including that both companies will launch all of the so-called "Competing Products" they are currently developing. SMF, Hall Rpt. ¶¶ 231-236.  As this Court has previously explained "only a minuscule percentage of drugs in development ever reaches the commercial market—and of those, only a subset ever prove profitable for their manufacturer. . . . Accordingly, reliance on a multitude of assumptions is endemic to any valuation of the prospective profitability of new pharmaceutical products." *Alphamed*, 432 F. Supp. 2d at 1335.[18] ████████████ ████████████████████████████ ███ ███████████████████████████ ████████████████████████████████████████████████████  SMF ¶¶ 63, 82.

---

[16]   *See also, e.g., Prysmian*, 2024 WL 4792084, at *1 (requiring a special verdict requiring the jury to determine individually whether alleged trade secrets were misappropriated).

[17] FUTSA does not allow for nominal damages. *See Alphamed*, 432 F. Supp. 2d at 1337.

[18]  Lupin admitted in its deposition that a product may be abandoned before approval based on a determination that it is not viable or will not be profitable. Ex. 12 at 215:11-13.

[19]  For example, Hall attempts to assess $7.6 million in "avoided costs" for Transpire's generic Fostair program, which Transpire abandoned based on the unexpected closure of the CDMOs it was using to develop this product, Ex. 14 (McDuff Report) ¶ 66, and therefore cannot possibly result in any profits to Transpire or losses to Lupin.

Consequently, Hall's damages estimates are predicated on forecasts concerning product approval and launch dates and profit projections that Lupin has conceded are just its "best guesses." Ex. 12 at 56:17-19, 156:1-157:23. If and when either company may ultimately succeed in launching the relevant products ) and how profitable those products may be is impossible to know. Lupin's and Transpire's projections are "overly speculative to form a reliable basis for head start damages[.]" *See Brightview Grp., LP v. Teeters*, 2021 WL 2627960, at *5–6 (D. Md. Feb. 8, 2021) (holding that projected revenues were "overly speculative to form a reliable basis for head start damages" because expert was not "'in a position to know' what kind of impact Defendants' alleged use of trade secrets will have on how quickly [Defendant] becomes profitable.").

Also, Hall's models assume that Transpire will enjoy a 1-2 year "head start" based on the alleged use of Lupin asserted trade secrets. As explained in Transpire's Daubert Motion, Mr. Shafer's "head start" opinions, adopted by Ms. Hall, should be excluded. Florida cases awarding head-start damages involved situations where the defendant had already entered the market—i.e., the head start led to cognizable profits. *See Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1185 (S.D. Fla. 2008); *Bailey v. St. Louis*, 196 So. 3d 375, 381 (Fla. 2d DCA 2016); *Med. Store, Inc. v. AIG Claim Servs., Inc.*, 2003 WL 25669175, at *1, 5 (S.D. Fla. Oct. 17, 2003); *see also BioPoint, Inc. v. Dickhaut*, 110 F.4th 337, 345–46 (1st Cir. 2024) ("Head start damages require evidence: (1) that the alleged misappropriation gave [defendant] a head start and (2) that the head start helped to bring about certain earnings over the following months or years."). "Head start" damages are not available because it is impossible to know if Transpire will realize or profit from any "head start."

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment as to Counts I and II.

Dated: March 11, 2025

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

/s/  *Samuel Williamson*

Samuel G. Williamson
Florida Bar No. 1033817
samuelwilliamson@quinnemanuel.com
Shalia M. Sakona
Florida Bar No. 107398
shaliasakona@quinnemanuel.com
Olivia A. Barket Yeffet
Florida Bar No. 1026382
oliviayeffet@quinnemanuel.com
David M. Walsh
Florida Bar No. 1048823
davidwalsh@quinnemanuel.com
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
(305) 402-4880

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, DC 20005

Nima Hefazi (admitted *pro hac vice*)
nimahefazi@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Andrew G. Shifren (admitted *pro hac vice*)
andrewshifren@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7181

Jocelyn Ma (pending *pro hac vice*)
jocelynma@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

*Counsel for Defendants*

**APPENDIX A**

| Document No. | Bates Number | Custodian | No. of Pages |
|---:|---|---|---:|
| 1 | Transpire_0041200 | Perlwitz, Axel | 99 |
| 2 | Transpire_0041299 | Perlwitz, Axel | 87 |
| 3 | Transpire_0041386 | Perlwitz, Axel | 3 |
| 4 | Transpire_0081585 | Perlwitz, Axel | 165 |
| 5 | Transpire_0081883 | Perlwitz, Axel | 165 |
| 6 | Transpire_0082054 | Perlwitz, Axel | 66 |
| 7 | Transpire_0082121 | Perlwitz, Axel | 63 |
| 8 | Transpire_0084643 | Perlwitz, Axel | 41 |
| 9 | Transpire_0070541 | Perlwitz, Axel | 124 |
| 10 | Transpire_0057253 | Perlwitz, Axel | 63 |
| 11 | Transpire_0057191 | Perlwitz, Axel | 62 |
| 12 | Transpire_0065568 | Perlwitz, Axel | 156 |
| 13 | Transpire_0067307 | Perlwitz, Axel | 50 |
| 14 | Transpire_0008439 | Perlwitz, Axel | 5552 |
| 15 | Transpire_0059117 | Perlwitz, Axel | 138 |
| 16 | Transpire_0060271 | Perlwitz, Axel | 5 |
| 17 | Transpire_0008295 | Perlwitz, Axel | 55 |
| 18 | Transpire_0028016 | Perlwitz, Axel | 30 |
| 19 | Transpire_0000556 | Perlwitz, Axel | 46 |
| 20 | Transpire_0000911 | Perlwitz, Axel | 4 |
| 21 | Transpire_0023276 | Perlwitz, Axel | 14 |
| 22 | Transpire_0023031 | Perlwitz, Axel | 92 |
| 23 | Transpire_0008350 | Perlwitz, Axel | 3 |
| 24 | Transpire_0000549 | Perlwitz, Axel | 7 |
| 25 | Transpire_0085590 | Perlwitz, Axel | 53 |
| 26 | Transpire_0030779 | Perlwitz, Axel | 97 |
| 27 | Transpire_0030876 | Perlwitz, Axel | 38 |
| 28 | Transpire_0000543 | Perlwitz, Axel | 6 |
| 29 | Transpire_0000602 | Perlwitz, Axel | 8 |
| 30 | Transpire_0023224 | Perlwitz, Axel | 6 |
| 31 | Transpire_0343880 | Perlwitz, Axel | 5 |
| 32 | Transpire_0044228 | Perlwitz, Axel | 19 |
| 33 | Transpire_0056960 | Perlwitz, Axel | 12 |
| 34 | Transpire_0344065 | Perlwitz, Axel | 52 |
| 35 | Transpire_0344242 | Perlwitz, Axel | 3 |
| 36 | Transpire_0344637 | Perlwitz, Axel | 9 |
| 37 | Transpire_0344646 | Perlwitz, Axel | 26 |
| 38 | Transpire_0344672 | Perlwitz, Axel | 10 |
| 39 | Transpire_0344682 | Perlwitz, Axel | 39 |

| | | | |
|---|---|---|---|
| 40 | Transpire_0344886 | Perlwitz, Axel | 14 |
| 41 | Transpire_0344900 | Perlwitz, Axel | 50 |
| 42 | Transpire_0344950 | Perlwitz, Axel | 7 |
| 43 | Transpire_0344957 | Perlwitz, Axel | 83 |
| 44 | Transpire_0345040 | Perlwitz, Axel | 56 |
| 45 | Transpire_0345096 | Perlwitz, Axel | 58 |
| 46 | Transpire_0345154 | Perlwitz, Axel | 83 |
| 47 | Transpire_0345237 | Perlwitz, Axel | 149 |
| 48 | Transpire_0345839 | Perlwitz, Axel | 103 |
| 49 | Transpire_0345942 | Perlwitz, Axel | 46 |
| 50 | Transpire_0345988 | Perlwitz, Axel | 111 |
| 51 | Transpire_0346103 | Perlwitz, Axel | 2 |
| 52 | Transpire_0346105 | Perlwitz, Axel | 2 |
| 53 | Transpire_0346151 | Perlwitz, Axel | 44 |
| 54 | Transpire_0346195 | Perlwitz, Axel | 5 |
| 55 | Transpire_0346206 | Perlwitz, Axel | 14 |
| 56 | Transpire_0346220 | Perlwitz, Axel | 30 |
| 57 | Transpire_0346332 | Perlwitz, Axel | 6 |
| 58 | Transpire_0346338 | Perlwitz, Axel | 9 |
| 59 | Transpire_0346347 | Perlwitz, Axel | 13 |
| 60 | Transpire_0346360 | Perlwitz, Axel | 17 |
| 61 | Transpire_0346387 | Perlwitz, Axel | 3 |
| 62 | Transpire_0346390 | Perlwitz, Axel | 5 |
| 63 | Transpire_0346395 | Perlwitz, Axel | 16 |
| 64 | Transpire_0346411 | Perlwitz, Axel | 19 |
| 65 | Transpire_0346430 | Perlwitz, Axel | 3 |
| 66 | Transpire_0346433 | Perlwitz, Axel | 11 |
| 67 | Transpire_0346445 | Perlwitz, Axel | 6 |
| 68 | Transpire_0346452 | Perlwitz, Axel | 38 |
| 69 | Transpire_0346490 | Perlwitz, Axel | 8 |
| 70 | Transpire_0346500 | Perlwitz, Axel | 14 |
| 71 | Transpire_0083713 | Perlwitz, Axel | 55 |
| 72 | Transpire_0346815 | Perlwitz, Axel | 272 |
| 73 | Transpire_0347087 | Perlwitz, Axel | 265 |
| 74 | Transpire_0347352 | Perlwitz, Axel | 115 |
| 75 | Transpire_0347467 | Perlwitz, Axel | 112 |
| 76 | Transpire_0347607 | Perlwitz, Axel | 22 |
| 77 | Transpire_0347794 | Perlwitz, Axel | 116 |
| 78 | Transpire_0347910 | Perlwitz, Axel | 37 |
| 79 | Transpire_0029042 | Perlwitz, Axel | 32 |
| 80 | Transpire_0081097 | Perlwitz, Axel | 40 |

| | | | |
|---|---|---|---|
| 81 | Transpire_0081137 | Perlwitz, Axel | 39 |
| 82 | Transpire_0081176 | Perlwitz, Axel | 208 |
| 83 | Transpire_0081385 | Perlwitz, Axel | 200 |
| 84 | Transpire_0082367 | Perlwitz, Axel | 63 |
| 85 | Transpire_0082431 | Perlwitz, Axel | 62 |
| 86 | Transpire_0028320 | Perlwitz, Axel | 238 |
| 87 | Transpire_0036890 | Perlwitz, Axel | 140 |
| 88 | Transpire_0038811 | Perlwitz, Axel | 308 |
| 89 | Transpire_0040005 | Perlwitz, Axel | 117 |
| 90 | Transpire_0039754 | Perlwitz, Axel | 144 |
| 91 | Transpire_0037030 | Perlwitz, Axel | 167 |
| 92 | Transpire_0038784 | Perlwitz, Axel | 27 |
| 93 | Transpire_0039953 | Perlwitz, Axel | 52 |
| 94 | Transpire_0039898 | Perlwitz, Axel | 55 |
| 95 | Transpire_0037440 | Perlwitz, Axel | 353 |
| 96 | Transpire_0037197 | Perlwitz, Axel | 243 |
| 97 | Transpire_0039119 | Perlwitz, Axel | 353 |
| 98 | Transpire_0085643 | Perlwitz, Axel | 74 |
| 99 | Transpire_0082800 | Perlwitz, Axel | 4 |
| 100 | Transpire_0082842 | Perlwitz, Axel | 27 |
| 101 | Transpire_0080139 | Perlwitz, Axel | 118 |
| 102 | Transpire_0080257 | Perlwitz, Axel | 119 |
| 103 | Transpire_0080376 | Perlwitz, Axel | 47 |
| 104 | Transpire_0080423 | Perlwitz, Axel | 47 |
| 105 | Transpire_0084283 | Perlwitz, Axel | 45 |
| 106 | Transpire_0046315 | Perlwitz, Axel | 165 |
| 107 | Transpire_0008353 | Perlwitz, Axel | 12 |
| 108 | Transpire_0008253 | Perlwitz, Axel | 42 |
| 109 | Transpire_0023986 | Perlwitz, Axel | 100 |
| 110 | Transpire_0024086 | Perlwitz, Axel | 15 |
| 111 | Transpire_0000690 | Perlwitz, Axel | 6 |
| 112 | Transpire_0000956 | Perlwitz, Axel | 42 |
| 113 | Transpire_0080472 | Perlwitz, Axel | 101 |
| 114 | Transpire_0080573 | Perlwitz, Axel | 109 |
| 115 | Transpire_0082184 | Perlwitz, Axel | 49 |
| 116 | Transpire_0082233 | Perlwitz, Axel | 50 |
| 117 | Transpire_0082283 | Perlwitz, Axel | 42 |
| 118 | Transpire_0082325 | Perlwitz, Axel | 42 |
| 119 | Transpire_0084374 | Perlwitz, Axel | 153 |
| 120 | Transpire_0023807 | Perlwitz, Axel | 66 |
| 121 | Transpire_0024591 | Perlwitz, Axel | 48 |

| | | | |
|---|---|---|---|
| 122 | Transpire_0024656 | Perlwitz, Axel | 112 |
| 123 | Transpire_0062694 | Perlwitz, Axel | 128 |
| 124 | Transpire_0062822 | Perlwitz, Axel | 252 |
| 125 | Transpire_0057064 | Perlwitz, Axel | 61 |
| 126 | Transpire_0057125 | Perlwitz, Axel | 66 |
| 127 | Transpire_0057316 | Perlwitz, Axel | 48 |
| 128 | Transpire_0062527 | Perlwitz, Axel | 167 |
| 129 | Transpire_0063074 | Perlwitz, Axel | 206 |
| 130 | Transpire_0027657 | Perlwitz, Axel | 21 |
| 131 | Transpire_0027722 | Perlwitz, Axel | 94 |
| 132 | Transpire_0027816 | Perlwitz, Axel | 104 |
| 133 | Transpire_0062417 | Perlwitz, Axel | 110 |
| 134 | Transpire_0065386 | Perlwitz, Axel | 182 |
| 135 | Transpire_0067123 | Perlwitz, Axel | 184 |
| 136 | Transpire_0070142 | Perlwitz, Axel | 399 |
| 137 | Transpire_0008407 | Perlwitz, Axel | 3 |
| 138 | Transpire_0023682 | Perlwitz, Axel | 16 |
| 139 | Transpire_0008365 | Perlwitz, Axel | 42 |
| 140 | Transpire_0023234 | Perlwitz, Axel | 38 |
| 141 | Transpire_0008250 | Perlwitz, Axel | 3 |
| 142 | Transpire_0013991 | Perlwitz, Axel | 52 |
| 143 | Transpire_0022730 | Perlwitz, Axel | 76 |
| 144 | Transpire_0027628 | Perlwitz, Axel | 29 |
| 145 | Transpire_0029074 | Perlwitz, Axel | 6 |
| 146 | Transpire_0080682 | Perlwitz, Axel | 88 |
| 147 | Transpire_0080770 | Perlwitz, Axel | 94 |
| 148 | Transpire_0080864 | Perlwitz, Axel | 52 |
| 149 | Transpire_0080916 | Perlwitz, Axel | 51 |
| 150 | Transpire_0023698 | Perlwitz, Axel | 7 |
| 151 | Transpire_0023705 | Perlwitz, Axel | 77 |
| 152 | Transpire_0028046 | Perlwitz, Axel | 96 |
| 153 | Transpire_0028558 | Perlwitz, Axel | 52 |
| 154 | Transpire_0094510 | Perlwitz, Axel | 137 |
| 155 | Transpire_0094683 | Perlwitz, Axel | 410 |
| 156 | Transpire_0014043 | Perlwitz, Axel | 161 |
| 157 | Transpire_0022403 | Perlwitz, Axel | 266 |
| 158 | Transpire_0014204 | Perlwitz, Axel | 277 |
| 159 | Transpire_0022347 | Perlwitz, Axel | 56 |
| 160 | Transpire_0022053 | Perlwitz, Axel | 252 |
| 161 | Transpire_0092142 | Perlwitz, Axel | 535 |
| 162 | Transpire_0032642 | Perlwitz, Axel | 4154 |

| | 163 | Transpire_0059255 | Perlwitz, Axel | 5 |
|---|---|---|---|---|
| | 164 | Transpire_0000412 | Perlwitz, Axel | 25 |
| | 165 | Transpire_0065260 | Perlwitz, Axel | 97 |
| | 166 | Transpire_0000437 | Perlwitz, Axel | 104 |
| | 167 | Transpire_0024548 | Perlwitz, Axel | 23 |
| | 168 | Transpire_0029110 | Perlwitz, Axel | 13 |
| | 169 | Transpire_0091287 | Perlwitz, Axel | 356 |
| | 170 | Transpire_0091643 | Perlwitz, Axel | 10 |
| | 171 | Transpire_0086583 | Perlwitz, Axel | 4686 |
| | 172 | Transpire_0000610 | Perlwitz, Axel | 79 |
| | 173 | Transpire_0029097 | Perlwitz, Axel | 13 |
| | 174 | Transpire_0084786 | Perlwitz, Axel | 181 |
| | 175 | Transpire_0024571 | Perlwitz, Axel | 20 |
| | 176 | Transpire_0001284 | Perlwitz, Axel | 464 |
| | 177 | Transpire_0001748 | Perlwitz, Axel | 130 |
| | 178 | Transpire_0002226 | Perlwitz, Axel | 286 |
| | 179 | Transpire_0002512 | Perlwitz, Axel | 5738 |
| | 180 | Transpire_0091867 | Perlwitz, Axel | 274 |
| | 181 | Transpire_0060300 | Perlwitz, Axel | 66 |
| | 182 | Transpire_0060366 | Perlwitz, Axel | 64 |
| | 183 | Transpire_0060430 | Perlwitz, Axel | 162 |
| | 184 | Transpire_0060593 | Perlwitz, Axel | 160 |
| | 185 | Transpire_0060753 | Perlwitz, Axel | 61 |
| | 186 | Transpire_0060814 | Perlwitz, Axel | 61 |
| | 187 | Transpire_0060875 | Perlwitz, Axel | 182 |
| | 188 | Transpire_0057986 | Perlwitz, Axel | 87 |
| | 189 | Transpire_0061085 | Perlwitz, Axel | 16 |
| | 190 | Transpire_0094504 | Perlwitz, Axel | 6 |
| | 191 | Transpire_0082811 | Perlwitz, Axel | 17 |
| | 192 | Transpire_0082828 | Perlwitz, Axel | 4 |
| | 193 | LUPIN_0010649 | Zeng, Xianming | 69 |
| | 194 | LUPIN_0011194 | Zeng, Xianming | 10 |
| | 195 | LUPIN_0011210 | Zeng, Xianming | 2 |
| | 196 | LUPIN_0013490 | Zeng, Xianming | 53 |
| | 197 | LUPIN_0248282 | Zeng, Xianming | 225 |
| | 198 | LUPIN_0248600 | Zeng, Xianming | 7 |
| | 199 | LUPIN_0248607 | Zeng, Xianming | 60 |
| | 200 | LUPIN_0248667 | Zeng, Xianming | 15 |
| | 201 | LUPIN_0250503 | Zeng, Xianming | 52 |
| | 202 | LUPIN_0251436 | Zeng, Xianming | 34 |
| | 203 | LUPIN_0251749 | Zeng, Xianming | 20 |

| 204 | LUPIN_0253675 | Zeng, Xianming | 16 |
|---|---|---|---|
| 205 | LUPIN_0253741 | Zeng, Xianming | 129 |
| 206 | LUPIN_0253870 | Zeng, Xianming | 61 |
| 207 | LUPIN_0274584 | Zeng, Xianming | 47 |
| 208 | Transpire_0161559 | Dao, Thu | 3 |
| 209 | Transpire_0161562 | Dao, Thu | 3 |
| 210 | Transpire_0161565 | Dao, Thu | 3 |
| 211 | Transpire_0161568 | Dao, Thu | 3 |
| 212 | Transpire_0161571 | Dao, Thu | 3 |
| 213 | Transpire_0161580 | Dao, Thu | 3 |
| 214 | Transpire_0164718 | Dao, Thu | 4 |
| 215 | Transpire_0164727 | Dao, Thu | 2 |
| 216 | Transpire_0164729 | Dao, Thu | 4 |
| 217 | Transpire_0164738 | Dao, Thu | 4 |
| 218 | Transpire_0164742 | Dao, Thu | 5 |
| 219 | Transpire_0164747 | Dao, Thu | 4 |
| 220 | Transpire_0164839 | Dao, Thu | 4 |
| 221 | Transpire_0170195 | Dao, Thu | 273 |
| 222 | Transpire_0171273 | Dao, Thu | 280 |
| 223 | Transpire_0171633 | Dao, Thu | 275 |
| 224 | Transpire_0171976 | Dao, Thu | 284 |
| 225 | Transpire_0219509 | Dao, Thu | 7 |
| 226 | Transpire_0219618 | Dao, Thu | 9 |
| 227 | Transpire_0219659 | Dao, Thu | 9 |
| 228 | Transpire_0219970 | Dao, Thu | 69 |
| 229 | Transpire_0220039 | Dao, Thu | 71 |
| 230 | Transpire_0225634 | Dao, Thu | 2 |
| 231 | Transpire_0225648 | Dao, Thu | 2 |
| 232 | Transpire_0225732 | Dao, Thu | 8 |
| 233 | Transpire_0227768 | Dao, Thu | 273 |
| 234 | Transpire_0228495 | Dao, Thu | 281 |
| 235 | Transpire_0229215 | Dao, Thu | 281 |
| 236 | Transpire_0343885 | Perlwitz, Axel | 3 |
| 237 | Transpire_0346377 | Perlwitz, Axel | 10 |
| 238 | Transpire_0346107 | Perlwitz, Axel | 44 |
| 239 | Transpire_0346101 | Perlwitz, Axel | 2 |
| 240 | Transpire_0344209 | Perlwitz, Axel | 33 |
| 241 | Transpire_0344830 | Perlwitz, Axel | 47 |
| 242 | Transpire_0344877 | Perlwitz, Axel | 9 |
| 243 | Transpire_0344554 | Perlwitz, Axel | 83 |
| 244 | Transpire_0344721 | Perlwitz, Axel | 109 |

| | | | |
|---|---|---|---|
| 245 | Transpire_0029080 | Perlwitz, Axel | 17 |
| 246 | Transpire_0346321 | Perlwitz, Axel | 4 |
| 247 | Transpire_0345386 | Perlwitz, Axel | 9 |
| 248 | Transpire_0080967 | Perlwitz, Axel | 130 |
| 249 | Transpire_0081751 | Perlwitz, Axel | 131 |
| 250 | Transpire_0344043 | Perlwitz, Axel | 16 |
| 251 | Transpire_0344156 | Perlwitz, Axel | 4 |
| 252 | Transpire_0305414 | Perlwitz, Axel | 80 |
| 253 | Transpire_0305430 | Perlwitz, Axel | 80 |
| 254 | Transpire_0305446 | Perlwitz, Axel | 80 |
| 255 | Transpire_0305462 | Perlwitz, Axel | 80 |
| 256 | Transpire_0305478 | Perlwitz, Axel | 80 |
| 257 | Transpire_0347579 | Perlwitz, Axel | 3 |
| 258 | Transpire_0000541 | Perlwitz, Axel | 1 |
| 259 | Transpire_0000542 | Perlwitz, Axel | 1 |
| 260 | Transpire_0000689 | Perlwitz, Axel | 1 |
| 261 | Transpire_0000697 | Perlwitz, Axel | 23 |
| 262 | Transpire_0000721 | Perlwitz, Axel | 24 |
| 263 | Transpire_0000805 | Perlwitz, Axel | 33 |
| 264 | Transpire_0000915 | Perlwitz, Axel | 41 |
| 265 | Transpire_0000998 | Perlwitz, Axel | 231 |
| 266 | Transpire_0016053 | Perlwitz, Axel | 5184 |
| 267 | Transpire_0021237 | Perlwitz, Axel | 671 |
| 268 | Transpire_0022669 | Perlwitz, Axel | 61 |
| 269 | Transpire_0022806 | Perlwitz, Axel | 38 |
| 270 | Transpire_0023123 | Perlwitz, Axel | 95 |
| 271 | Transpire_0023218 | Perlwitz, Axel | 6 |
| 272 | Transpire_0023230 | Perlwitz, Axel | 4 |
| 273 | Transpire_0023290 | Perlwitz, Axel | 10 |
| 274 | Transpire_0023335 | Perlwitz, Axel | 39 |
| 275 | Transpire_0023567 | Perlwitz, Axel | 10 |
| 276 | Transpire_0023577 | Perlwitz, Axel | 10 |
| 277 | Transpire_0023587 | Perlwitz, Axel | 10 |
| 278 | Transpire_0023669 | Perlwitz, Axel | 10 |
| 279 | Transpire_0023782 | Perlwitz, Axel | 25 |
| 280 | Transpire_0023873 | Perlwitz, Axel | 88 |
| 281 | Transpire_0023964 | Perlwitz, Axel | 22 |
| 282 | Transpire_0024131 | Perlwitz, Axel | 8 |
| 283 | Transpire_0024294 | Perlwitz, Axel | 37 |
| 284 | Transpire_0024331 | Perlwitz, Axel | 36 |
| 285 | Transpire_0024368 | Perlwitz, Axel | 3 |

| | | | |
|---|---|---|---|
| 286 | Transpire_0024775 | Perlwitz, Axel | 1 |
| 287 | Transpire_0024792 | Perlwitz, Axel | 2 |
| 288 | Transpire_0024967 | Perlwitz, Axel | 192 |
| 289 | Transpire_0026585 | Perlwitz, Axel | 181 |
| 290 | Transpire_0027678 | Perlwitz, Axel | 23 |
| 291 | Transpire_0027701 | Perlwitz, Axel | 21 |
| 292 | Transpire_0027922 | Perlwitz, Axel | 94 |
| 293 | Transpire_0028142 | Perlwitz, Axel | 117 |
| 294 | Transpire_0028259 | Perlwitz, Axel | 12 |
| 295 | Transpire_0029123 | Perlwitz, Axel | 12 |
| 296 | Transpire_0029135 | Perlwitz, Axel | 6 |
| 297 | Transpire_0029881 | Perlwitz, Axel | 5 |
| 298 | Transpire_0029886 | Perlwitz, Axel | 3 |
| 299 | Transpire_0030128 | Perlwitz, Axel | 202 |
| 300 | Transpire_0030537 | Perlwitz, Axel | 232 |
| 301 | Transpire_0037793 | Perlwitz, Axel | 983 |
| 302 | Transpire_0041654 | Perlwitz, Axel | 12 |
| 303 | Transpire_0042145 | Perlwitz, Axel | 9 |
| 304 | Transpire_0042154 | Perlwitz, Axel | 4 |
| 305 | Transpire_0042160 | Perlwitz, Axel | 6 |
| 306 | Transpire_0042166 | Perlwitz, Axel | 5 |
| 307 | Transpire_0042173 | Perlwitz, Axel | 5 |
| 308 | Transpire_0042178 | Perlwitz, Axel | 4 |
| 309 | Transpire_0042184 | Perlwitz, Axel | 4 |
| 310 | Transpire_0042207 | Perlwitz, Axel | 4 |
| 311 | Transpire_0042211 | Perlwitz, Axel | 6 |
| 312 | Transpire_0042229 | Perlwitz, Axel | 4 |
| 313 | Transpire_0042239 | Perlwitz, Axel | 6 |
| 314 | Transpire_0042247 | Perlwitz, Axel | 6 |
| 315 | Transpire_0042284 | Perlwitz, Axel | 4 |
| 316 | Transpire_0042293 | Perlwitz, Axel | 3 |
| 317 | Transpire_0042306 | Perlwitz, Axel | 8 |
| 318 | Transpire_0042621 | Perlwitz, Axel | 27 |
| 319 | Transpire_0042648 | Perlwitz, Axel | 27 |
| 320 | Transpire_0042675 | Perlwitz, Axel | 25 |
| 321 | Transpire_0044140 | Perlwitz, Axel | 4 |
| 322 | Transpire_0044225 | Perlwitz, Axel | 3 |
| 323 | Transpire_0044831 | Perlwitz, Axel | 164 |
| 324 | Transpire_0044995 | Perlwitz, Axel | 158 |
| 325 | Transpire_0045153 | Perlwitz, Axel | 156 |
| 326 | Transpire_0046480 | Perlwitz, Axel | 109 |

| | | | |
|---|---|---|---|
| 327 | Transpire_0057039 | Perlwitz, Axel | 7 |
| 328 | Transpire_0057055 | Perlwitz, Axel | 9 |
| 329 | Transpire_0057655 | Perlwitz, Axel | 9 |
| 330 | Transpire_0058575 | Perlwitz, Axel | 175 |
| 331 | Transpire_0059280 | Perlwitz, Axel | 9 |
| 332 | Transpire_0059405 | Perlwitz, Axel | 20 |
| 333 | Transpire_0059425 | Perlwitz, Axel | 24 |
| 334 | Transpire_0059449 | Perlwitz, Axel | 24 |
| 335 | Transpire_0059473 | Perlwitz, Axel | 22 |
| 336 | Transpire_0059495 | Perlwitz, Axel | 25 |
| 337 | Transpire_0059520 | Perlwitz, Axel | 21 |
| 338 | Transpire_0059541 | Perlwitz, Axel | 25 |
| 339 | Transpire_0059566 | Perlwitz, Axel | 25 |
| 340 | Transpire_0059591 | Perlwitz, Axel | 20 |
| 341 | Transpire_0059612 | Perlwitz, Axel | 24 |
| 342 | Transpire_0059636 | Perlwitz, Axel | 23 |
| 343 | Transpire_0059659 | Perlwitz, Axel | 24 |
| 344 | Transpire_0060128 | Perlwitz, Axel | 22 |
| 345 | Transpire_0060152 | Perlwitz, Axel | 8 |
| 346 | Transpire_0060164 | Perlwitz, Axel | 19 |
| 347 | Transpire_0060189 | Perlwitz, Axel | 9 |
| 348 | Transpire_0060212 | Perlwitz, Axel | 7 |
| 349 | Transpire_0060239 | Perlwitz, Axel | 22 |
| 350 | Transpire_0061057 | Perlwitz, Axel | 7 |
| 351 | Transpire_0061072 | Perlwitz, Axel | 4 |
| 352 | Transpire_0061076 | Perlwitz, Axel | 4 |
| 353 | Transpire_0061080 | Perlwitz, Axel | 5 |
| 354 | Transpire_0061101 | Perlwitz, Axel | 7 |
| 355 | Transpire_0061108 | Perlwitz, Axel | 4 |
| 356 | Transpire_0061112 | Perlwitz, Axel | 1 |
| 357 | Transpire_0061122 | Perlwitz, Axel | 8 |
| 358 | Transpire_0061130 | Perlwitz, Axel | 7 |
| 359 | Transpire_0061137 | Perlwitz, Axel | 9 |
| 360 | Transpire_0061146 | Perlwitz, Axel | 6 |
| 361 | Transpire_0061152 | Perlwitz, Axel | 11 |
| 362 | Transpire_0061163 | Perlwitz, Axel | 8 |
| 363 | Transpire_0061171 | Perlwitz, Axel | 6 |
| 364 | Transpire_0061202 | Perlwitz, Axel | 8 |
| 365 | Transpire_0061210 | Perlwitz, Axel | 1 |
| 366 | Transpire_0063370 | Perlwitz, Axel | 140 |
| 367 | Transpire_0063510 | Perlwitz, Axel | 191 |

| | | | |
|---|---|---|---|
| 368 | Transpire_0063701 | Perlwitz, Axel | 148 |
| 369 | Transpire_0064072 | Perlwitz, Axel | 32 |
| 370 | Transpire_0064104 | Perlwitz, Axel | 53 |
| 371 | Transpire_0064164 | Perlwitz, Axel | 141 |
| 372 | Transpire_0065016 | Perlwitz, Axel | 172 |
| 373 | Transpire_0067357 | Perlwitz, Axel | 1237 |
| 374 | Transpire_0068594 | Perlwitz, Axel | 235 |
| 375 | Transpire_0068829 | Perlwitz, Axel | 125 |
| 376 | Transpire_0068954 | Perlwitz, Axel | 186 |
| 377 | Transpire_0069140 | Perlwitz, Axel | 80 |
| 378 | Transpire_0070665 | Perlwitz, Axel | 8422 |
| 379 | Transpire_0079627 | Perlwitz, Axel | 343 |
| 380 | Transpire_0079970 | Perlwitz, Axel | 112 |
| 381 | Transpire_0080082 | Perlwitz, Axel | 29 |
| 382 | Transpire_0080111 | Perlwitz, Axel | 28 |
| 383 | Transpire_0082569 | Perlwitz, Axel | 198 |
| 384 | Transpire_0082786 | Perlwitz, Axel | 10 |
| 385 | Transpire_0082796 | Perlwitz, Axel | 4 |
| 386 | Transpire_0082804 | Perlwitz, Axel | 5 |
| 387 | Transpire_0082809 | Perlwitz, Axel | 2 |
| 388 | Transpire_0082832 | Perlwitz, Axel | 10 |
| 389 | Transpire_0082869 | Perlwitz, Axel | 7 |
| 390 | Transpire_0083894 | Perlwitz, Axel | 300 |
| 391 | Transpire_0084329 | Perlwitz, Axel | 45 |
| 392 | Transpire_0084528 | Perlwitz, Axel | 115 |
| 393 | Transpire_0084684 | Perlwitz, Axel | 102 |
| 394 | Transpire_0084967 | Perlwitz, Axel | 117 |
| 395 | Transpire_0085084 | Perlwitz, Axel | 8 |
| 396 | Transpire_0085093 | Perlwitz, Axel | 8 |
| 397 | Transpire_0085101 | Perlwitz, Axel | 121 |
| 398 | Transpire_0085222 | Perlwitz, Axel | 111 |
| 399 | Transpire_0085333 | Perlwitz, Axel | 148 |
| 400 | Transpire_0085481 | Perlwitz, Axel | 109 |
| 401 | Transpire_0085717 | Perlwitz, Axel | 70 |
| 402 | Transpire_0085787 | Perlwitz, Axel | 74 |
| 403 | Transpire_0085862 | Perlwitz, Axel | 71 |
| 404 | Transpire_0085933 | Perlwitz, Axel | 148 |
| 405 | Transpire_0086081 | Perlwitz, Axel | 109 |
| 406 | Transpire_0095134 | Perlwitz, Axel | 26 |
| 407 | Transpire_0095197 | Dao, Thu | 33 |
| 408 | Transpire_0095292 | Dao, Thu | 1 |

| 409 | Transpire_0095294 | Dao, Thu | 1 |
|---|---|---|---|
| 410 | Transpire_0095305 | Dao, Thu | 14 |
| 411 | Transpire_0095324 | Dao, Thu | 14 |
| 412 | Transpire_0095373 | Zeng, Xianming | 61 |
| 413 | Transpire_0095488 | Zeng, Xianming | 175 |
| 414 | Transpire_0095668 | Zeng, Xianming | 14 |
| 415 | Transpire_0095836 | Zeng, Xianming | 25 |
| 416 | Transpire_0095911 | Zeng, Xianming | 10 |
| 417 | Transpire_0107807 | Dao, Thu | 1 |
| 418 | Transpire_0108805 | Dao, Thu | 13 |
| 419 | Transpire_0108818 | Dao, Thu | 7 |
| 420 | Transpire_0108826 | Dao, Thu | 7 |
| 421 | Transpire_0108833 | Dao, Thu | 1 |
| 422 | Transpire_0108834 | Dao, Thu | 1 |
| 423 | Transpire_0108835 | Dao, Thu | 1 |
| 424 | Transpire_0108838 | Dao, Thu | 171 |
| 425 | Transpire_0109009 | Dao, Thu | 11 |
| 426 | Transpire_0109020 | Dao, Thu | 32 |
| 427 | Transpire_0109056 | Dao, Thu | 14 |
| 428 | Transpire_0109071 | Dao, Thu | 104 |
| 429 | Transpire_0109181 | Dao, Thu | 12 |
| 430 | Transpire_0109193 | Dao, Thu | 14 |
| 431 | Transpire_0109207 | Dao, Thu | 18 |
| 432 | Transpire_0109229 | Dao, Thu | 1 |
| 433 | Transpire_0109230 | Dao, Thu | 1 |
| 434 | Transpire_0109231 | Dao, Thu | 1 |
| 435 | Transpire_0109232 | Dao, Thu | 1 |
| 436 | Transpire_0109233 | Dao, Thu | 1 |
| 437 | Transpire_0109234 | Dao, Thu | 1 |
| 438 | Transpire_0109235 | Dao, Thu | 1 |
| 439 | Transpire_0109236 | Dao, Thu | 1 |
| 440 | Transpire_0109237 | Dao, Thu | 1 |
| 441 | Transpire_0109238 | Dao, Thu | 1 |
| 442 | Transpire_0109239 | Dao, Thu | 1 |
| 443 | Transpire_0109240 | Dao, Thu | 1 |
| 444 | Transpire_0109241 | Dao, Thu | 1 |
| 445 | Transpire_0109242 | Dao, Thu | 1 |
| 446 | Transpire_0109244 | Dao, Thu | 1 |
| 447 | Transpire_0109245 | Dao, Thu | 1 |
| 448 | Transpire_0109248 | Dao, Thu | 1 |
| 449 | Transpire_0109258 | Dao, Thu | 1 |

| | | | | |
|---|---|---|---|---|
| 450 | Transpire_0109268 | Dao, Thu | | 1 |
| 451 | Transpire_0109373 | Dao, Thu | | 38 |
| 452 | Transpire_0109411 | Dao, Thu | | 55 |
| 453 | Transpire_0109504 | Dao, Thu | | 69 |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document is being filed on

March 11, 2025, and served on all counsel of record on the Service List attached via transmission

of Notice of Electronic Filing generated by CM/ECF.

/s/   *Samuel G. Williamson*

Samuel G. Williamson
Florida Bar No. 1033817
samuelwilliamson@quinnemanuel.com

34